FORT WORTH & RIO GRANDE RAILWAY COMPANY v. SOUTHWESTERN TELEGRAPH AND TELEPHONE COMPANY.

No. 1124. Decided January 8, 1903.

**1.—Eminent Domain—Telephone—Railway—Condemnation of Right of Way.**

A telephone company has authority, by article 699, Rev. Stats., to condemn an easement for the construction of its line along the right of way of a railway company already devoted to public purposes. (Pp. 170, 174.)

**2.—Same—Case Limited.**

The language of article 699, Rev. Stats., amounts to an express grant to telegraph and telephone companies of the power to condemn, for construction purposes, the use of the right of way of a railway corporation, and such right is not subject to the limitations upon the implied power of condemning property already devoted to public use, viz., that the new enterprise be of paramount public importance and that it can not be practically accomplished in any other way, recognized in Railway Company v. Railway Company, 92 Texas, 162. (Pp. 170-174.)

Questions certified from the Court of Civil Appeals for the Third District, in an appeal from Brown County.

*Geo. H. Fearons* and *N. L. Lindsley,* for appellant.—Under the statute of Texas a telegraph and telephone line having the right to exercise the power of eminent domain, desiring to enter upon public or private lands for the purpose of constructing and operating its telegraph and telephone lines, "may appropriate so much of said lands as may be necessary," and no more. Sayles' Civ. Stats., arts. 698, 699.

The language of the statute must be followed literally. Appellee's authority to condemn is by legislative enactment, and it can exercise this right only in so far as the Legislature in express terms provides. There can be no taking under the statute by implication. Sayles' Civ. Stats., arts 698, 699; Sabine & E. T. Railway Co. v. Gulf & I. Railway Co., 92 Texas, 164.

The statute providing that appellee may "appropriate so much of public or private lands as may be necessary," appellee at most can take only "so much as may be necessary" for the proper construction and maintenance of its line, and there must be shown an actual necessity for the taking of this, such as a physical impossibility of avoiding it, before there can be any taking at all. Sayles' Civ. Stats., arts. 698, 699; Sabine & E. T. Railway Co. v. Gulf & I. Railway Co., 92 Texas, 164.

There can be no taking of lands already devoted to a public use, for the purpose of devoting it to another and wholly different use, unless it be shown that it is for the public benefit, and of a higher order than the use for which it is already used, as well as that it can not be practically constructed in any other way.   City of Fort Wayne v. Railway Co., 132 Ind., 558; Railway Co. v. Railway Co., 112 Ill., 599; Barre Railway Co. v. Railway Co., 61 Vt., 1.

Where a railroad company has acquired a right of way 100 feet in width, and which is necessary for the use of said road, it can not be appropriated to another and different use, except where the Legislature, in express terms, has authorized it to be done, or where such authority arises from necessary implication.   10 Am. and Eng. Enc. of Law, 2d ed., 1075, 1094, 1096, 1097; 3 Elliott on Railroads, secs. 922, 964; Pierce on Railroads, 155-7; 1 Rorer on Railroads, 284; Mills on Em. Dom., secs. 45, 46, 209; Lewis on Em. Dom., sec. 276; Matter of N. Y., B. Railway Co., 20 Hun, 204; New York & C. Railway Co. v. C. & C. Tel. Co., 21 Hun, 261; Matter of Boston & A. Railway Co., 53 N. Y., 574; Matter of Railway Comrs., 66 N. Y., 418; Matter of City of Buffalo, 68 N. Y., 167; Railway Co. v. Williamson, 91 N. Y., 561; City of Valparaiso v. Railway Co., 42 Am. and Eng. R. R. Cases, 686; City of Seymour v. Railway Co., 47 Am. and Eng. R. R. Cases, 38; City of Fort Wayne v. Railway Co., 132 Ind., 558; Railway Co. v. Railway Co., 112 Ill., 599; Barre Railway Co. v. Railway Co., 61 Vt., 1; State v. Montclair, 35 N. J. L., 330; Railway Co. v. L. B. Com., 39 N. J. L., 28; Railway Co. v. City of Newark, 10 N. J. L., 356; City of Bridgeport v. Railway Co., 36 Conn., 263; St. Paul U. D. Co. v. St. Paul, 30 Minn., 359; N. W. Tel. Echg. Co. v. Railway Co., 79 N. W. Rep., 316; Railway Co. v. Baily, 3 Ore., 164; Inhabitants of Springs v. Railway Co., 4 Cush., 63; Railway Co. v. Railway Co., 118 Mass., 391; Railway Co. v. Railway Co., 124 Mass., 368; Vault Co. v. Railway Co., 53 Fed. Rep., 687; Railway Co. v. Felton, 69 Fed. Rep., 273; Pittsburg J. Railway Co.'s Appeal, 28 Am. and Eng. R. R. Cases, 269; B. & H. T. Co. v. Railway Co., 6 Am. Rep., 401; Appeal of Sharron Railway Co., 9 Am. St. Rep., 135; Railway Co. v. Railway Co., 15 Am. St. Rep., 885; City of Fort Wayne v. Railway Co., 32 Am. St. Rep., 282; Rand on Em. Dom., secs. 97, 98; Railway Co. v. Railway Co., 63 N. W. Rep., 1037; Railway Co. v. Depot Co., 125 Mo., 87.

We deduce from the foregoing authorities the following important principles:

1.   That where property has been appropriated to a public use— especially as a right of way for railroads—it should not be appropriated for another and different public use, except where the Legislature has in direct terms or by necessary implication authorized it to be done.

2.   Even where the Legislature authorizes a right of way to be used for another and different public use, it should not be permitted by the

courts, under the law of eminent domain, unless there is an urgent public necessity for so doing. In this respect the necessity should be made to appear from the petition, and it must likewise appear that it was not purely for the convenience of the plaintiff, or to save expense in the use of said right of way.

3. That sound public policy requires the railway companies to maintain their roads and rights of way free of obstructions for the benefit of the traveling public. They should be required to keep trespassers and those not in their employ, or subject to their orders, away from the right of way. If this plaintiff can be permitted to occupy defendant's right of way for the purposes claimed in its petition, then other corporations can condemn it for similar purposes. We would then have upon defendant's premises numerous servants of other corporations, over which defendant has no control, with its right of way strewn with telegraph poles, wire and men, with its fences left down and stock trespassing upon defendant's track, and thereby endangering public travel, as well as augmenting the immense damage which would ensue to defendant in being responsible by way of compensation to persons and property injured along its right of way. When you take into consideration, in addition to the foregoing, the fact that these poles and wires may be blown down upon the track in case of storm, the risk to public life is so great that, without some necessity for so doing, the court upon general principles should hesitate long before permitting the exercise of such a right.

4. As suggested by the Supreme Court of Minnesota, why should not this plaintiff be required to step outside the right of way and condemn or purchase its own right of way along the route which plaintiff now proposes to run its line? It unquestionably would be better for the public, even if it entail upon plaintiff additional expense, if the latter should be required to run its line elsewhere. We therefore insist that there is neither law nor justice in the plaintiff's contention.

*McLaurin & Wozencraft,* for appellee.—A telegraph and telephone line designed for use by the public is held in Texas to have the same rights in acquiring right of way as if it were a telegraph line only, and is under the law a recognized public use, for which property may be taken under the eminent domain power of the State. Rev. Stats., arts. 698, 699; San Antonio & A. P. Railway Co. v. Southwestern Tel. and T. Co., 93 Texas, 313.

All kinds of property, and every variety and degree of interest in property, may be taken under the power of eminent domain. Const., art. 1, secs. 17, 26; Randle v. Railway Co., 63 Texas, 589; Boom Co. v. Patterson, 98 U. S., 403; Lewis on Em. Dom., ed. 1888, 262.

Both the telegraph and the telephone are instruments of commerce, and interstate communication by either of these methods is commercial intercourse within the constitutional jurisdiction of Congress to reg-

ulate and control.   Joyce on Elec. Law, secs. 43, 44, and many cases
there cited.

Under the Constitution of the United States, Congress has power to
regulate commerce with foreign nations, and among the several States,
to establish postoffices and postroads, and to make all laws necessary and
proper for carrying into execution the powers enumerated and all other
powers vested by the Constitution in the government of the United
States, or any department thereof.   Const. of United States, art. 1,
sec. 8, pars. 4, 8, 19.

By United States statute, enacted in 1872, all railroads or parts of
railroads which were then or may thereafter be in operation are estab-
lished as postroads.   U. S. Rev. Stats., sec. 3964.

On the 24th day of July, 1866, Congress passed an act entitled, "An
act to aid in the construction of telegraph lines, and to secure to the
government the use of the same for postal, military and other purposes."
By this act it is provided that "any telegraph company now organized,
or which may hereafter be organized under the laws of any State, shall
have the right to construct, maintain and operate lines of telegraph
*   *   *   over and along any of the military or postroads of the United
States which have been or may hereafter be declared such by law."
This act confers upon telegraph companies the right, privilege and fran-
chise to construct and operate its lines on all railways.   This authority,
however, can only be acquired by the telegraph company filing its writ-
ten acceptance with the Postmaster General of the restrictions and ob-
ligations required by this act.   Rev. Stats., U. S., secs. 5263, 5268.

The fact that the Federal telegraph act of July 24, 1866, grants a
right to take property for telegraph purposes, but fails to provide a pro-
cedure for condemnation, will not defeat the act.   The procedure is
found in the eminent domain acts of the several States.   W. U. Telegraph
Co. v. Am. Telegraph Co., 9 Biss., 72; Postal Co. v. Morgan's La. Rail-
way Co., 49 La. Ann., 58; Postal Telegraph Co. v. La. Railway Co.,
49 La. Ann., 1270; Postal Telegraph Co. v. Southern Railway Co., 89
Fed. Rep., 190; United States v. Jones, 109 U. S., 513; Burt v. Insurance
Co., 106 Mass., 362.

The Texas statutes, as construed by the courts, authorize telegraph
and telephone companies to condemn for the use of their lines a right
of way over lands held by railways for right of way purposes.   Rev.
Stats., art. 699; Railway Co. v. Telegraph and Tel. Co., 93 Texas, 313;
Telegraph and Tel. Co. v. Railway Co., 52 S. W. Rep., 107; Railway Co.
v. Telegraph and Tel. Co., 52 S. W. Rep., 86; Railway Co. v. Postal
Tel. Co., 52 S. W. Rep., 108; Railway Co. v. Postal Tel. Co., 45 S. W.
Rep., 179; Railway Co. v. Telegraph and Tel. Co., 45 S. W. Rep., 152;
Railway Co. v. Telegraph and Tel. Co., 56 S. W. Rep., 201; Railway
Co. v. Telegraph and Tel. Co., 57 S. W. Rep., 312.

It is settled law in the United States that the right of way of rail-
way companies may be taken under the eminent domain procedure pro-

vided by the laws of the several States, as right of way for telegraph lines. The one or two cases apparently in opposition to this rule can not be regarded as an exception, the facts in those cases distinguishing them from the uniform line of authorities holding to the contrary. Postal Tel. Co. v. Railway Co., 7 Am. Elec. Cases, 417; Railway Co. v. Postal Tel. Co., 46 S. W. Rep., 571; Railway Co. v. Postal Tel. Co., 26 So. Rep., 371; Railway Co. v. Postal Tel. Co., 51 N. E. Rep., 382; Postal Tel. Co. v. Morgan's, etc., Railway Co., 21 So. Rep., 183; Railway Co. v. Postal Tel. Co., 38 S. E. Rep., 353; Postal Tel. Co. v. Southern Railway Co., 90 Fed. Rep., 31.

In determining whether the law, as an express grant, intends that a telegraph company shall have the right and privilege of selecting railway right of way as a location for its lines, and of condemning same for such use, the Federal statutes and the State statutes relating to the same matter can and should be read together as one system, and when so considered they will be found to be consistent, the State statute being auxiliary to the Federal statute in this regard.

The appropriation of so much of the right of way of a railway as is not essential to the enjoyment of its franchise and property, for the construction of a telegraph line, is to and for a more necessary public use. Postal Tel. Co. v. Railway Co., 7 Am. Elec. Cases, 421; Railway Co. v. Railway Co., 111 Cal., 231.

In determining the extent of the easement sought in a petition for condemnation of the railway company's property, as right of way for a telegraph line, and in estimating the injuries to and interference with the railway company's free use of its property, the stipulations in the petition for condemnation in restriction of the easement sought should be considered. St. Louis & C. Railway Co. v. Postal Tel. Co., 51 N. E. Rep., 391; Mobile & O. Railway Co. v. Postal Tel. Co., 26 So. Rep., 371; Mobile & O. Railway Co. v. Postal Tel. Co., 46 S. W. Rep., 571.

A telegraph line construed of poles set in the ground upon the right of way of a railway company at intervals of 145 feet, with wires suspended from pole to pole on crossarms, actually takes from the railway, if anything, only the spaces occupied by the poles, and in addition only deprives the owner of the right of way of the free and uninterrupted use of such space above the right of way as is actually occupied by the wires and crossarms. The actual taking of the post holes, coupled with this interference of the wires and crossarms, constitutes all, if anything, that is taken. Calcasieu Lumber Co. v. Harris, 77 Texas, 23; Railway Co. v. Telegraph and Tel. Co., 45 S. W. Rep., 152; Railway Co. v. Postal Tel. Co., 51 N. E. Rep., 390; St. Louis v. Western U. Tel. Co., 63 Fed. Rep., 76; Telegraph Co. v. Catkamp, 103 Ill., 420; Railway Co. v. Postal Tel. Co., 46 S. W. Rep., 572; Railway Co. v. Postal Tel. Co., 26 So. Rep., 371.

It is the intention of the Texas statutes that railway companies shall not be permitted to hold any more land than such as may be necessary

for the construction and use of the railway, and stations and other accommodations necessary to the accomplishment of the objects of the incorporation of the railway company. Rev. Stats., arts. 4478, 4479, 4480, 4483.

So immaterial is that injury done to such portions of a railway company's right of way as are not actually in use for railway purposes, by the location of a street across same or the building of a telegraph and telephone line longitudinally upon the same, that the United States Supreme Court and the courts of the several States hold that only nominal damages can be recovered for such taking. Chicago Railway Co. v. Chicago, 166 U. S., 248; Railway Co. v. Telegraph and Tel. Co., 56 S. W. Rep., 201; Railway Co. v. Postal Tel. Co., 52 S. W. Rep., 108; Telegraph and Tel. Co. v. Railway Co., 52 S. W. Rep., 107; Railway Co. v. Telegraph and Tel. Co., 57 S. W. Rep., 313; Railway Co. v. Telegraph and Tel. Co., 52 S. W. Rep., 87; Railway Co. v. Postal Tel. Co., 26 So. Rep., 373; Railway Co. v. Postal Tel. Co., 51 N. E. Rep., 390; Railway Co. v. Postal Tel. Co., 46 S. W. Rep., 573.

A telegraph company authorized to exercise the power of eminent domain in acquiring a right of way, is by law given the privilege of selecting the most advantageous location, and the courts have no right to deny the exercise or the power so vested in the company. Rev. Stats., arts. 698, 699, 4424; Crary v. Port Arthur Dock Co., 92 Texas, 284; Croly v. Railway Co., 56 S. W. Rep., 615; Backus v. Depot Co., 169 U. S., 568; Boom Co. v. Patterson, 98 U. S., 403; Railway Co. v. N. C. M. Co., 51 Law. Rep. Ann., 945; 10 Am. and Eng. Enc. of Law, 2 ed., 1057; Pearce on Railroads, 254; Lewis on Em. Dom., sec. 286.

The lands of a railway company not actually in use by such company nor absolutely necessary for the enjoyment of its franchise, when sought to be condemned for telegraph purposes, must stand upon the same footing as the land of an individual, which may be taken even from the actual and profitable use of the owner. Rev. Stats., art. 699; Peoria, etc., Railway v. Railway Co., 66 Ill., 175; Butte, etc., Railway v. Railway Co., 31 Law. Rep. Ann., 310.

The trial court committed no error in overruling appellant's demurrer which is made the basis of the certified questions to this court, because, by the allegations of appellee's petition for condemnation, which are admitted by the demurrer, it appears that the condemnation sought, if granted, will neither destroy the use to which appellant's property has been devoted, nor materially interfere with the use of same or the exercise of appellant's franchise, and in such case property already dedicated to a public use may be taken for a second public use even under a general statutory grant.

The necessity which warrants the taking for a second public use of property already dedicated to another public use is not of that character which requires proof that the second use can not be constructed without taking the property of the first. The necessity which warrants such tak-

ing, where the two uses may conveniently exist together, does not mean absolute or indispensable necessity; but does mean that which is reasonably requisite and proper for the accomplishment of the end in view under the particular circumstances of the case; and in such case a general grant of power will authorize the taking. Rev. Stats., arts. 699, 4424; Crary v. Port Arthur, etc., Co., 92 Texas, 283; McCullough v. Maryland, 4 Wheat., 411; Juilliard v. Greenman, 110 U. S., 421; Butte Railway Co. v. Montana Railway Co., 31 Law. Rep. Ann., 299.

WILLIAMS, ASSOCIATE JUSTICE.—Certified questions from the Court of Civil Appeals for the Third District, as follows:

"This is a condemnation proceeding instituted by the Southwestern Telegraph and Telephone Company against the Fort Worth & Rio Grande Railway Company, and resulting in a judgment in favor of the Telegraph and Telephone Company, in accordance with and subject to the limitations stated in its petition, and an appeal by the railway company. The essential averments of the plaintiff's petition are as follows:

" 'That the plaintiff is a corporation duly incorporated and is duly authorized and empowered to do business as a telegraph and telephone company in the State of Texas, having complied fully with the requirements of the law relative to foreign corporations in that regard and holding a permit from the State of Texas to do business therein. And plaintiff further says that it is duly and legally authorized and empowered to erect, own, operate and maintain magnetic telegraph and telephone lines for the use of the public in the rapid transmission of intelligence in the States of Texas, Arkansas, New York and elsewhere in the United States of America, being duly chartered for that purpose.

" '4. That the said defendant is a public highway and postroad of the United States; and that plaintiff has, in all things, complied with the acts of the Congress of the United States in such cases made and provided, and has filed its written acceptance of all the restrictions and obligations imposed by the acts of Congress, with the Postmaster-General of the United States, as is required by law, and that plaintiff is entitled to all the rights and privileges conferred upon telegraph companies by the acts of Congress of the United States in such cases made and provided.

" '5. That the defendant is a private corporation duly incorporated and organized and transacting the business usually conducted by railway companies in the public service of carrying passengers, freights and the United States mails for hire, being a postroad. This business defendant conducts through and over its railroad, known as Fort Worth & Rio Grande Railroad, by it owned and operated from and between the cities of Stephenville and Brownwood, in the State of Texas, and passing through the cities of Dublin, Comanche and other towns in the State of Texas.

" '7. That plaintiff has already built and is maintaining a system of several thousand miles of telegraph and telephone lines in the State

of Texas, Arkansas and New York, by it now owned and operated for the use of the public for the rapid transmission of intelligence for commercial purposes and for other public purposes.

" '8.   That as an addition to the part of the said system of telegraph and telephone lines now maintained and operated by plaintiff as aforesaid, and to be used for the same purposes as said system (to wit, to the service of the public) and in connection therewith, plaintiff desires to build upon defendant's right of way a telegraph and telephone line, hereinafter called 'additional line,' from the said city of Stephenville, in Erath County, Texas, in a southerly direction, at a distance near to and parallel with (except as hereinafter shown) defendant's main line of railway to the city of Brownwood, in Brown County, Texas.

" '9.   That plaintiff and defendant, after considering this matter together, can not agree upon a purchase by plaintiff of a right of way upon, along and over said lands and property, hereinafter more particularly described, for said additional line, nor can they agree as to amount of damages that may be caused to the lands and property of defendant by the construction, operation and maintenance thereon of the said additional line, hence plaintiff desires to have a right of way along, upon and over the said lands and property condemned in accordance with law, in order that plaintiff may lawfully construct, operate and maintain thereon its said additional telegraph and telephone lines.

" '10.   That plaintiff shall locate said telegraph and telephone (additional line) at a distance of thirty-five feet from and in a direction easterly of the center line between the rails of the main track of defendant's railway, and parallel with said center line of said railway, except where deflections are made as herein elsewhere shown; that in order to do so, it will be necessary and most advantageous for plaintiff to build, operate and maintain its said (additional) line in, along, upon and over certain land owned and occupied by the defendant as a right of way for its said railroad, at the place and in the manner herein indicated, which land is hereinafter more fully described, and the points of entering upon and leaving the said land are hereinafter specially given.

" '11.   That the poles, wires and crossarms shall be so placed upon said land and at all times thereon so kept and maintained as not to obstruct any private roadway or railway crossing; and so as not to impede the free use by the said defendant of the said lands for the purpose of accommodating public travel upon said railway; and so as not to impede the defendant in the use of said railroad for any other purpose as a common carrier; and so as not to obstruct the free use of or come in contact with any other telegraph or telephone line now existing upon the said land, along and upon the right of way of the defendant over the same, and in such manner as not to interfere with any structure, drain or ditch upon the defendant's right of way now there existing and by defendant used in its railway purposes, or that may hereafter be there placed by defendant in the necessary use of its right of way for railway purposes.

" 'And plaintiff shall only have an easement in defendant's right of way for the purpose of building, operating and maintaining thereon its said telegraph and telephone line, having ingress and egress to and from said lands for that purpose, and the building, operating and maintaining of said line shall not prevent free passage under the wire to defendant, nor the use of timbers, soil, rock, gravel, or any other material between the poles or beyond the wires from the railway; and if the defendant shall at any time desire to change the location of its tracks, or to construct any new tracks or sidetracks, or erect any depots or other structures, or to open any gravel pits or rock quarries, or to remove any material or soil, or in case the poles and wires shall be found to interfere with the running or operating of cars or trains upon defendant's tracks; or to endanger the safety of employes of defendant or passengers traveling on defendant's trains, then the plaintiff shall remove poles and wires from the point of interference, at its own cost, to any point on defendant's right of way or on the same side of defendants main track of railway, near and adjacent to the former position occupied by said poles and wires as may be designated by defendant, such removal to take place after written notice for a reasonable time to be given plaintiff by defendant, stating why the removal is desired and the place to which the removal shall be made.

" '12. That in erecting the said telegraph and telephone line in, along, upon and over the said tracts of land, it will be necessary and most advantageous for plaintiff to set its poles in the ground in a single line with each other and parallel with (except as hereinafter shown) the center line, between the rails of the main track of defendant's said railroad, at the distance of 144 1-3 feet each from the next preceding pole in the line, except where different distances between the poles are hereinafter specially given. The poles are to be 25 feet long, 7 inches in diameter at the top and not exceeding 18 inches in diameter at the lower end, except those poles for which different length and sizes are hereinafter specially given. The poles are to be erected perpendicular to the ground, except as to those hereinafter specified, and set into it six feet. To each of these poles, at right angles to it, and at right angles to the center line between the rails of the main track of defendant's railway, are to be firmly and securely attached three crossarms, each to be 6 feet long and 4 inches by 4 inches in size, and made fast to the poles at a point equidistant from the ends of the crossarms; the top edges of the three crossarms shall be 3 inches, 30 inches and 52 inches respectively below the top of the poles; and upon each side of the poles, plaintiff will string wires attaching them to insulators, made fast to strong and durable wooden pins, which pins are to be attached securely to the crossarms, and the wires shall be so strung that each crossarm shall support six wires, three on each side of the pole; and the wires shall be strung taut, as above indicated, from pole to pole, for the transmission of plaintiff's telegraph and telephone messages, in the service of the public. In measuring the distance to the said poles in all

cases the measurement shall be made to the center of the pole at the ground. In locating the distance the telegraph and telephone line is to be built from the railroad, the measurement is to be to the several poles at the ground, from the center line, between the rails of the main track of defendant's railway, along lines drawn at right angles to said center line, and reaching from said center line to the center of the poles which are to support the wires of the said telegraph and telephone line. All poles that are longer than 30 feet shall be set in the ground to the depth of seven feet. Into each crossarm shall be securely fastened a durable and strong wooden pin at the point where the wire is to be supported on the crossarm, and on each pin, protecting it from the wire, shall be securely fastened an insulator, to which the wire shall be attached. The poles will each occupy a space of 18 inches square, or $2\frac{1}{4}$ square feet of land.'

"The petition accurately describes the boundaries of appllant's property and embraces allegations as follows:

" 'The appellant's property upon which appellee seeks to condemn a right of way is certain property held by appellant for right of way purposes for its railway, in the counties of Erath, Comanche and Brown, in the State of Texas.

" 'That the lands over which appellee seeks to condemn a right of way "are connected throughout their entire length and constitute one entire and continuous tract or strip of land held by defendant as a right of way for its said railway, and along and upon which the defendant's said railway is built and operated." Within the said strip of land, defendant's right of way, said strip being 100 feet wide from end to end thereof, and practically at the center line thereof, from end to end, lengthwise said strip, is built the main track of defendant's railway.'

"The petition then gives the exact distance from the center of appellant's main track of every one of the few poles not occupying the pole line's specified distance of 35 feet from said main track. It gives also the length of every pole not of the specified height of the poles in the line. It further gives the number and dimensions of the crossarms, the number of wires, and all the plans, specifications, details and measurements for the location and structure of the line.

"The petition further stipulates that appellant shall not be liable in damages for injury by fire to appellee's poles, and relieves appellant of any possible obligation to clear away combustible material from about the poles.

"The petition prays that damages be assessed for the condemnation as sought in the petition and for the building, operating and maintaining the line at the place and in the manner indicated in the petition, and for such other orders and judgments as the case may warrant.

"The defendant interposed and the court overruled the following special exception:

" 'Because plaintiff has no authority and right under the laws of this

State to exercise the power of eminent domain in, along, on and over the right of way of this defendant railway corporation, and parallel with its track, unless not to do so would defeat· the object and purpose of its grant; because, before there can be a taking, such as prayed for by the plaintiff, it must be shown that it is not practicable to construct its line between said points in any other way than upon defendant railway company's right of way.'

"The action of the trial court in overruling this exception is a material question properly presented in appellant's brief for decision, and the Court of Civil Appeals hereby certifies that question to the Supreme Court for decision. In other words, stating the question in a different form: Can there be a condemnation of property already devoted to a public use in the manner described in the plaintiff's petition for the purpose of devoting it to another and a different use in the manner and under the limitations prescribed in the plaintiff's petition, unless it be shown that it is for the public benefit and of a higher order than the purpose for which it is already used, as well as that it can not be practically constructed in any other way?"

In the case of the San Antonio & Aransas Pass Railway Company against the Southwestern Telegraph and Telephone Company, 93 Texas, 313, it was held by this court, that telephone companies were invested with the same power to condemn property for the construction of their lines as that given by the Revised Statutes to telegraph companies. The extent of that power is the subject presented for consideration by the present certificate. It is granted by articles 698 and 699, Revised Statutes, as follows:

"Art. 698. Corporations created for the purpose of constructing and maintaining magnetic telegraph lines are authorized to set their poles, piers, abutments, wires and other fixtures along, upon and across any of the public roads, streets and waters of this State, in such manner as not to incommode the public in the use of such road, streets and waters."

"Art. 699. Such companies are also authorized to enter upon any lands, whether owned by private persons in fee or in any less estate, or by any corporation, whether acquired by purchase or by virtue of any provision in the charter of such corporation, for the purpose of making preliminary surveys and examinations with a view to the erection of any telegraph lines, and from time to time to appropriate so much of said lands as may be necessary to erect such poles, piers, abutments, wires and other necessary fixtures for a magnetic telegraph, and to make such changes of location of any part of said lines as may from time to time be deemed necessary, and shall have˜a right of access to construct said line, and, when erected, from time to time as may be required to repair the same, and may proceed to obtain the right of way and to condemn lands for the use of the corporation in the manner provided by law in the case of railway corporations."

The objection urged by appellant to the attempt to condemn a portion

of the land previously acquired by it for a right of way, is that the property has already been devoted to public use; that the grant of the power of eminent domain in general terms to another corporation does not, upon established principles, include the right to take such property, unless it be absolutely necessary to the exercise of the privilege granted; and that, as the statute has not expressly conferred the right of condemnation asserted, the plaintiff must show such absolute necessity, i. e., that its line can not, in the language of the question certified, "be practically constructed in any other way." The doctrine of the law upon which this contention is founded is thus very well stated by Justice Brown in Sabine & E. T. Railway Co. v. Gulf & I. Railway Co, 92 Texas, 162, 166, 168: "The law [conferring power of condemnation upon railway companies] does not authorize the condemnation of property which has been already dedicated to a public use when such condemnation would practically destroy the use to which it has been devoted. No express authority is given [to railroad companies] by our statutes to condemn such property, and the authority can not be implied from the general power conferred by the law, unless the necessity be so great as to make the new enterprise of paramount importance to the public, and it can not be practically accomplished in any other way." The doctrine is further stated on page 168: "The authorities before cited fully sustain the proposition that such property will not be taken in condemnation proceedings when the taking will destroy the use to which it is devoted, unless it be found that the constructing road or the connection sought to be made is of so great importance to the public as to demand that another public use of less importance shall be set aside for its benefit, and that the new entrprise can not be accomplished in any other practical way. The first occupier of the ground is entitled to all the advantages derived from the establishment of the public use therein, and no question of convenience nor expense to the company seeking condemnation can be considered, unless it be such as to render the performance of the duty enjoined by law practically impossible by any other means which can be used by the constructing company." Obviously the first question which occurs in the consideration of such cases is, whether or not the Legislature has expressly conferred the power asserted. The rule of construction laid down in the quotation, and in the authorities generally, is applied in cases where the second use to which the property is sought to be put will destroy or, at least, materially interfere with that to which such property has been previously devoted. When this is the situation courts refuse to hold that the Legislature, by a mere general grant of the power to enter upon and condemn land, intended to authorize the destruction or material impairment of an already established public use, unless it appears that the power last conferred can be exercised in no other practical way. In such cases the power is to be implied, and can not be implied from anything less than practical necessity. But all authority concedes the power of the Legislature to authorize the taking of property which has already been condemned to public

use, and we must therefore look to the law to see if the power here in question has been conferred.

The power of condemnation granted to telegraph companies is expressed in language both general and specific. The statute authorizes the construction of telegraph lines upon and across public roads, streets, etc., showing that the Legislature thought it proper to grant the privilege with respect to some lands already in use by the public. It then authorizes the condemnation of "any lands, whether owned by private persons in fee or in any less estate, or by any corporation, whether acquired by purchase or by virtue of any provision in the 'charter of such corporation." It is plain that the characters of estates in lands of corporations, thus made subject to the power, are the same as those of private persons, i. e., "either in fee or in any less estate." It is equally plain that such estates are meant as have been acquired by corporations in any manner whatsoever. All lands owned by corporations, in any kind of estate, must have been acquired either by "purchase" or "by virtue of some provision in their charters." If lands are acquired "by virtue of any provision in the charter" they are expressly subjected to such proceedings as this. Rights of way of railroad companies acquired by condemnation proceedings are acquired "by virtue" of provisions either of special charters or charters founded upon the general law, and therefore come within the express provision of the statute. If it be said that the power given is only a general one and can not, under the rule of construction stated, be held to refer to property held by corporations for public purposes, how can we account for the use of this language, at once so comprehensive and so particular? Other provisions of the statute conferring the power of eminent domain upon other kinds of corporations give the right to take any lands of persons or corporations; and some of them give the right to construct works along and across public roads, streets, waters, etc., but in none of them did the Legislature take the pains to use the specific language employed in favor of telegraph companies. Unless it was foreseen that questions as to the extent of the power might arise out of the characters of estates held and the modes of their acquisition, and ought to be settled by the statute, why should the Legislature have referred to those incidents at all? We must assume that this language was used for a purpose, and it can best be subserved by giving to the words of the statute their true and legitimate meaning rather than by frittering them away by construction. The reasons which actuated the Legislature are easily conjectured. Telegraph lines were in existence upon rights of way of railway companies throughout the country, and it was common knowledge that they did not impede but rather facilitated the business of the carriers. Whatever might be the effect of the construction of great numbers of such lines along railroads, there has not been at any time such conditions existing in this State as to cripple or impede the carrying business and to call for closer restrictions by legislation upon the rights granted to telegraph companies. So general has been the opinion that

telegraph lines can exist upon the rights of way of railroad companies, consistently with the rights of the latter, that Congress in 1866 gave permission for the construction of such lines along the national post-roads, some of which are railroads. The Legislature acted upon the knowledge of these well known facts and conditions, and in granting powers to telegraph companies, employed language materially differing from that used in conferring the right of condemnation upon corporations whose objects required different uses of property employed in their business,—language well chosen to express the power in controversy. Authority to burden such property with another railroad, or a turnpike, or a canal would involve consequences very different from those flowing from a grant to a telegraph company of authority to maintain its line on the same property, and hence the kinds of estates to be subjected to the power are differently specified in the statute. And at last, the provisions applicable to telegraph companies, when interpreted as we interpret them, authorized only the doing of that, by authority of law, which was being done every day in various parts of the country either under such authority or by contract. Another evidence that the Legislature meant what we hold it to have meant, is found in article 700:

"Art. 700. No corporation shall have power to contract with any owner of land for the right to erect and maintain a telegraph line over his lands to the exclusion of the lines of other companies."

The history of the litigation of the country makes it well known to us, as it was doubtless well known to the Legislature, that contracts of the character here prohibited were being made between railroad companies and one telegraph company for the exclusive use of rights of way. This was the evil to be prevented by this provision, which presupposes that the Legislature intended to confer upon telegraph companies generally the right to use the rights of way of railway companies for the construction of telegraph lines.

Our conclusion does not impute to the Legislature a purpose to destroy or impair the use by railway companies of their property for all of the purposes for which it is needed, but rather a recognition of the fact that such use will not be interfered with by the legitimate exercise of the privileges granted to telegraph companies. From this conclusion it results that the appellee has the same authority to condemn a right of way over the property in question that it would have to condemn the property of others, and that the mere fact that it could obtain such right of way over other property or in other ways furnishes no defense to the proceeding. The Legislature having itself determined and enacted that such a use of the property is one to which it may be applied consistently with the prior use, no question as to the comparative importance of the two uses is left open for the courts to determine. Many such condemnations have been had in this State and have been sustained by the Courts of Civil Appeals, which are the courts of last resort in such cases. In some of the decisions the point under consideration has been expressly decided adversely to appellant, and in others it was neces-

sarily involved. Telegraph and Tel. Co. v. Railway, 52 S. W. Rep., 107; Railway Co. v. Telegraph and Tel. Co., 52 S. W. Rep., 86; Railway Co. v. Postal Tel. Co., 52 S. W. Rep., 108; Railway Co. v. Postal Tel. Co., 45 S. W. Rep., 179; Railway Co. v. Telegraph and Tel. Co., 45 S. W. Rep., 152; Railway Co. v. Telegraph and Tel. Co., 56 S. W. Rep., 201; Railway Co. v. Telegraph and Tel. Co., 57 S. W. Rep., 312.

We answer that the exception was properly overruled by the trial court. What we have said sufficiently answers the question as otherwise stated.