CRENSHAW et al. v. STAPLES.    (No. 1411.)

Court of Civil Appeals of Texas. Texarkana. Feb. 25, 1915. Rehearing Denied March 4, 1915.)

1. SALES ☞479—REMEDIES OF SELLER.

Plaintiff sold personal property to defendant reserving title as security. Defendant was given possession and control over the property. Held, that the conditional sale, which by Rev. St. 1911, art. 5654, is treated as a sale and chattel mortgage, did not entitle plaintiff upon defendant's breach to recover rent for the use of the property, but entitled him to recover the amount of the debt.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1418–1432, 1434–1438; Dec. Dig. ☞ 479.]

2. PLEADING ☞72—PRAYER FOR RELIEF.

A prayer for general relief authorizes the court to grant such relief as the facts warrant.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 143, 144; Dec. Dig. ☞72.]

3. REPLEVIN ☞124—SALE OF PROPERTY REPLEVIED—LIABILITY.

Where property is replevied, the party replevying obligates himself to have it forthcoming to abide the final decision in the suit, under Rev. St. 1911, art. 7104, and where plaintiff after replevying property sold it, he and the sureties on his bond cannot take advantage of the fact that after execution of the bond one of the mules replevied died and the other property depreciated.

[Ed. Note.—For other cases. see Replevin, Cent. Dig. §§ 487–497; Dec. Dig. ☞124.]

Appeal from Panola County Court; J. R. Duran, Special Judge.

Action by F. N. Staples against O. C. Crenshaw and others. From a judgment for plaintiff, defendants appeal. Reformed and affirmed.

H. N. Nelson, of Carthage, for appellants. Brooke & Woolworth, of Carthage, for appellee.

HODGES, J. The appellee, Staples, filed this suit against the appellant O. C. Crenshaw on the 7th day of August, 1912, alleging, in substance, that on or about the 1st day of November, 1911, he was the owner and had possession of and that he was still the owner and entitled to the possession of, certain personal property described as a shingle mill and the appurtenances, together with one mule and some wagons. All of the items of the property are set out and the value of each stated in detail, aggregating the sum of $421. It is further alleged that all of the above property except the mule and wagons was situated on the appellee's homestead; that it was agreed by the appellee and Crenshaw that the latter was to operate the machinery mentioned at his own cost, and was to pay to the appellee the sum of $25 per month until the full sum of $410 was paid; and that during the time the machinery was to be thus operated both the title and possession of the machinery, mules, and wagons, should remain in the appellee. The agreement also provided that, in case Crenshaw failed or refused to pay the sum of $25 per month, he was to cease to operate the machinery and lose all of his rights to the same. It was further agreed that, if Crenshaw from the time he began to operate the machinery paid to the appellee the sum of $25 per month for each month thereafter until the full sum of $410 was paid, then at the expiration of that time the property was to be his. In pursuance of that agreement, Crenshaw was permitted to take possession and begin the operation of the machinery, which he continued until about the 6th day of August, 1912; that he failed to perform his agreement in paying the sum of $25 per month, but, on the contrary, he had paid nothing in accordance with his undertaking. The petition then proceeds to set out the rental value of the property, and alleges that Crenshaw refuses to deliver possession of the property to the appellee, and that he was setting up a claim of some kind to its ownership. The petition then prays for a judgment for the title and possession of the property, and for the sum of $10 per month from the 1st day of November for its use, for costs of suit, and for such other and further relief as he may be entitled to both in law and in equity.

The record shows that on the same day an affidavit and bond were filed, and a writ of sequestration issued by which the property described in the petition was seized by the sheriff of Panola county; that within 10 days thereafter the appellant, Crenshaw, filed a replevin bond conditioned according to law, with the appellants W. D. Hill and J. N. Ash as his sureties. Subsequently the ap-

pellant Crenshaw answered, alleging, among other things, that he purchased the machinery at the time mentioned in the appellee's petition at the price stated; that when this trade was made the appellee owed him a sum of money largely in excess of the price of the machinery; and that he took the machinery with the understanding that a settlement was to be had between them and that if he (Crenshaw) owed the appellee anything this balance would be paid at the rate of $25 per month. He further denied that he owed anything for the machinery, and claimed damages by reason of the issuance and service of the writ of sequestration.

The case was submitted to a jury upon special issues, and the following facts found: (1) That the appellee and the appellant Crenshaw did enter into a contract by which it was agreed that the price of the machinery and property involved in the suit was fixed at $410, and that Crenshaw should pay to the appellee the sum of $25 per month from the 1st day of November, 1911, until the amount of $410 was paid; that by this agreement the title to the property was to remain in Staples until these payments were made. (2) That Crenshaw had paid nothing for the property. (3) That the appellee did not owe Crenshaw any sum of money equal to the value of the property. (4) That the value of the property on the 12th day of August, 1912, the date it was replevied, was $421; each item being separately listed and valued. (5) That the rental value of the property was $5 per month.

In accordance with that verdict, the court entered up the following judgment, omitting the preliminary recitals:

"And it appearing to the court that the property in controversy was the property of the plaintiff, and that the value of said property as assessed by the jury was $421, and it further appearing to the court from the verdict of the jury that the defendant was in possession of said property from the 1st day of November, 1911, until the 5th day of August, 1914, and it further appearing from the verdict of the said jury that the rental value of said property is $5 per month, and it further appearing to the court that said property was sequestered by the plaintiff on the 7th day of August, 1912, and was replevied by the defendant on the 12th day of August, 1912, and that W. D. Hill and J. N. Ash are sureties on said replevin bond, the said bond being conditioned as required by law, it is therefore ordered, adjudged, and decreed by the court that the plaintiff, F. N. Staples, do have and recover of O. C. Crenshaw, the defendant, and W. D. Hill and J. N. Ash, the sum of $421. It is further ordered, adjudged, and decreed by the court that the plaintiff, F. N. Staples, do have and recover of the defendant O. C. Crenshaw the sum of $5 per month from the 1st day of November, 1911, until the 7th day of August, 1912. It is further ordered, adjudged, and decreed by the court that the plaintiff do have and recover of the defendant O. C. Crenshaw, and W. D. Hill and J. N. Ash, the sum of $5 per month from August 12, 1914, the sum of $118.88."

Judgment for costs is also rendered against these sureties.

Since the appeal has been perfected and

briefs filed in this court, the appellee offers to remit so much of the judgment as awards a recovery for the rental value of the property. He also suggests that, if the court should hold that the judgment is erroneous in awarding costs against the sureties, it should be modified and not reversed.

Eliminating those two features of the judgment, we have practically but two questions left: (1) Is the judgment against the appellant Crenshaw excessive? (2) Are the sureties on his replevin bond liable for the value of the property at the time it was replevied?

[1, 2] Crenshaw and his sureties file separate briefs presenting these different assignments of error. Crenshaw attacks the ruling of the court in failing to permit him to prove that the property at the time of trial had greatly depreciated in value, and also that feature of the court's instructions where he directs the jury to find the value of the property at the time it was replevied. It appears from both the pleadings and the judgment rendered that the plaintiff below and the court treated this as a suit to recover specific property, and that the liability of the appellant Crenshaw was to be measured by the value of the property at the time it should have been delivered to the plaintiff. But, as we construe the transaction upon which this suit is based, there was a sale of the property by Staples to Crenshaw, with a reservation of the title as security for the payment of the purchase price. The evidence clearly shows that the physical possession of the property was delivered to Crenshaw; that he had the right to use and operate it and to appropriate all the revenues and benefits arising therefrom to his own use; that he had obligated himself to pay a fixed sum as the purchase price, with the understanding that after the payment of that sum the property was to be his absolutely. Under article 5654 of the Revised Civil Statutes of 1911, contracts of this character are defined as chattel mortgages. Treating the transaction as a sale, and the parties as mortgagor and mortgagee, the measure of the mortgagor's liability was the amount of his debt, $410, and the accrued legal interest, at the time of the trial, and not the market value of the property. Inasmuch as the judgment does not exceed the amount of the purchase price and the accrued interest, the appellant Crenshaw has no right to complain of any error which did not extend his liability beyond that fixed by his contract. The judgment as to him will be reformed so as to eliminate that feature making him liable for the rental value of the property. While it is true the appellee did not pray for a personal judgment based upon that contract, he alleged all the facts necessary to constitute a sale and mortgage; and his prayer for general relief enables the court to render such a judgment as the facts found by the jury authorize.

[3] The remaining question is: Did the

sureties have a right to complain at the action of the court in making their liability depend upon the value of the property at the time it was replevied, and not upon its value at the time of the trial? Under ordinary conditions, where there has been no breach of the replevin bond which prevents a return of the property in satisfaction of the judgment as permitted by law, this contention is correct. Luedde et al. v. Hooper, 95 Tex. 172, 66 S. W. 55; Wood v. Fuller, 34 Tex. Civ. App. 178, 78 S. W. 236. But in this case the facts show without dispute that, after the execution and delivery of the replevin bond, one of the animals embraced in the property sequestered died, and that the remainder had been disposed of by Crenshaw. It was also shown by the testimony of both the appellee and Crenshaw that at the time of the trial the property was comparatively worthless. When Crenshaw disposed of the property does not appear, and there was no offer to show that its value at the time of this disposition was different from what it was at the time it was replevied by him. When Crenshaw replevied the property, he obligated himself to have it forthcoming to abide the final decision rendered in the suit. Revised Civil Statutes, art. 7104. It was upon his promise to do this, and the execution of the bond to insure its fulfillment, that he was permitted to retain the custody of the property. The bond is not a substitute which authorizes the defendant to sell or otherwise dispose of the property at his election. Crawford v. S. R. I. Plow Co., 33 Tex. Civ. App. 510, 77 S. W. 280. It is a solemn undertaking by the defendant to have the property on hand and ready to be subjected to any writ that may be issued against it, and his sureties guarantee that he will do this. If he fails, the plaintiff is entitled to recover whatever he loses by reason of such failure. Watts v. Overstreet, 78 Tex. 571, 14 S. W. 704. Therefore, when the defendant, after securing possession of personal property in this manner, sells it before the day of trial, he voluntarily places it beyond his power to fulfill his undertaking and commits a breach of his bond. His liability for the value of the property then becomes absolute if he loses upon the main issue in the case. To permit him after such a sale to prove that the value of the property at the time of the trial was less than it was when it passed into his hands, and thus reduce his liability, would allow him to profit by his own misconduct. After he parts with his title and possession of the property, fluctuations in value cannot inure to his benefit, but may operate to his injury. What estops the principal is equally effective against those who guaranteed the performance of his undertaking. The facts of this case are such as to take it out of the rule laid down by the Supreme Court in Luedde v. Hooper as previously cited.

We conclude that the trial court committed no error in holding that the value of the property at the time it was replevied was the proper measure of damages. The judgment, however, will be reformed so as to relieve the sureties from liability for rents and costs of suit, and, as reformed, will be affirmed. The costs of this appeal will be adjudged against the appellee.