

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

April 12, 1961

Honorable Jack N. Fant
County Attorney
El Paso County
El Paso, Texas

Dear Mr. Fant:

Opinion No. WW-1040

Re: Authority of Commissioners
Court of El Paso County to
convey 1.67 acres of land,
dedicated and used as a
county park, back to its
grantor, the United States
of America, under the facts
stated, and related ques-
tions.

   In your letter pertaining to the above subject, you
ask the opinion of this office as to the authority of the
Commissioners Court of El Paso County to convey certain land
back to the grantor, the United States of America, the validity
of a deed executed by the County Judge of El Paso County con-
veying such land to the United States pursuant to an agree-
ment between the County and the City of El Paso, and the
validity of the agreement entered into between the City and
the County relating to the conveyance of such land. You fur-
ther request the opinion of this office on the question of
whether, under Article 1175, Vernon's Civil Statutes, the
City of El Paso has or had the right of eminent domain to
acquire the fee simple title to said property for city purposes;
and if the City and County agreed upon the public use of the
property by agreement and the County thereafter executed such
a deed, if the deed and agreement would thus be valid.

   From the facts presented in your letter it appears
that the United States, on October 11, 1937, acting through
the then Secretary of State, conveyed approximately 352 acres
of land (in which the 1.67 acres in question are included) to
the County of El Paso, "so long as the said premises continue
to be used by or on behalf of the grantee herein for public
recreational park purposes . . ." The County then established
a county park known as Ascarate Park on this land and has con-
tinued to own, operate, maintain and control said park. As
a result of negotiations between the Federal Government and
the County and City of El Paso, the Commissioners Court, on
January 11, 1960, passed an order stating:

". . . that the County of El Paso deed to the
Federal Government a strip of land in Ascarate
Park consisting of 1.67 acres which will in turn
be deeded over to the City by the Federal Govern-
ment for the purpose of the City of El Paso erect-
ing a training tower for firemen which in turn
will reduce the fire insurance rate in El Paso and
that the County Judge be authorized to sign said
deed on approval of same by the County Attorney."

Thereafter, on January 13, 1960, the County Judge, on behalf
of the County, executed a Special Warranty Deed conveying the
1.67 acres to the United States of America for the purpose of
enabling the United States to convey this land to the City of
El Paso. Also on January 13, 1960, the Mayor of El Paso and
the County Judge, on behalf of the City and County, respectively,
signed an agreement providing as follows:

". . .

"Whereas, by deed dated October 11, 1937,
the United States of America conveyed to the
County of El Paso for public recreational park
purposes a tract of land which had been acquir-
ed by the United States in connection with the
rectification of the Rio Grande in the El Paso-
Juarez Valley; and

"Whereas, it is deemed in the public in-
terest that 1.6737 acres of land more or less
out of said tract be conveyed to the City of El
Paso, for public purposes other than those per-
mitted in the deed from the United States to
the County, said 1.6737 acres being a part of
Ascarate Park, situated in El Paso County, Texas,
and more particularly described by metes and
bounds as follows:

". . . /land description/

"Now therefore in consideration of the pre-
mises and of the mutual benefits moving to each
of the parties therefrom, the City agrees to use
said property for a fire drill tower and such
other necessary incidental uses pertaining to
said drill tower and exercises and drills connect-
ed therewith, and the City further agrees with the
County that the City will not conduct upon said
property any concessions.

". . ."

On January 15, 1960, the United States Commissioner, International Boundary and Water Commission, United States and Mexico, acting for and on behalf of the United States of America, conveyed the 1.67 acres, without warranty, to the City of El Paso to be used for public purposes.

Section 18 of Article V of the Constitution of Texas confers authority upon the Commissioners Court in the following language:

". . . The County Commissioners so chosen, with the County Judge as presiding officer, shall compose the County Commissioners Court, which shall exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws of the State, or as may be hereafter prescribed."

Statutory provisions relating to the disposition of county lands such as are involved here are found in Articles 6078a, 5248c, and 1577, Vernon's Civil Statutes.

Article 6078a pertains to the abandonment of county parks and does not apply to the above facts inasmuch as the Commissioners Court made no determination to close and abandon the land as a park.

Article 5248c, relating to the authority of counties to convey lands to the United States at private sale is also inapplicable inasmuch as it pertains to the sale of lands used for public purposes which are in excess of the needs of the county for its public purposes. These lands are authorized to be conveyed to the United States, "for any fair consideration . . . under the provisions of the Statutes of the United States of America authorizing the acquisition of sites for public buildings." That this Statute was not intended to encompass the situation here presented is further evidenced by the wording of Section 3, validating, "proceedings and orders heretofore had and made . . . for the conveyance . . . of any plot of ground such as is described in Section 1 hereof to the United States of America, pursuant to any advertisement by its officers inviting proposals to sell site for any public building . . .", and by Section 4, the emergency clause, which reads in part as follows:

"Sec. 4. The fact that the erection of public buildings for the United States of America at locations convenient for the public may be prevented or delayed unless this Act be enacted to take immediate effect creates an emergency . . ." Acts 46th Leg., 1939, p. 139.

The conveyance by the Commissioners Court to the United States of America was not in compliance with the provisions of Article 1577, which reads as follows:

"The Commissioners Court may, by an order to be entered on its minutes, appoint a Commissioner to sell and dispose of any real estate of the county at public auction, and notice of said public auction shall be advertised at least twenty (20) days before the day of sale, by the officer, by having the notice thereof published in the English language once a week for three (3) consecutive weeks preceding such sale in a newspaper in the county in which the real estate is located and in the county which owns the real estate, if they are not the same. The deed of such Commissioner, made in conformity to such order for and in behalf of the county, duly acknowledged and proven and recorded, shall be sufficient to convey to the purchasers all the right, title, and interest and estate which the county may have in and to the premises to be conveyed. Provided, however, that where abandoned right-of-way property is no longer needed for highway or road purposes and the county decides to sell said right-of-way property, it shall be sold with the following priorities: (1) to abutting or adjoining landowners; (2) to the original grantors, his heirs or assigns of the original tract from whence said right-of-way was conveyed; or (3) at public auction as provided above. Nothing contained in this Article shall authorize any Commissioners Court to dispose of any lands given, donated or granted to such county for the purpose of education in any other manner than shall be directed by law. As amended Acts 1949, 51st Leg., p. 904, ch. 485, § 1; Acts 1953, 53rd Leg., p. 447, ch. 133, § 1."

The authority of the Commissioners Court to convey county lands in a manner other than that provided by this Statute was denied in the case of <u>Ferguson v. Halsell</u>, 47 Tex. 421, (1877), wherein the Court, holding invalid a deed which conveyed county land at a private sale, stated:

> ". . . Although this statute is permissive in its terms, yet it is the only mode expressly pointed out in the general laws of the State by which the County Court can divest the county of its title to its real estate. No special law, as applicable to this particular case, has been referred to. The general doctrine is, that as the County Court is the agent of the county, in its corporate capacity, it must conform to the mode prescribed for its action in the exercise of the powers confided to it. The prescribing of a mode of exercising a power by such subordinate agencies of the Government has often been held to be a restriction to that mode.
>
> ". . ."

This construction was recognized in <u>Wooters v. Hall</u>, 61 Tex. 15, (1884), and was followed in <u>Llano County v. Johnson, et al</u>, 29 S.W. 56 (Civ. App. 1895), and <u>Llano County v. Knowles, et al</u>, 29 S.W. 549 (Civ. App. 1895). The following language was used in the latter two cases:

> ". . . The commissioners' court of the county occupy towards its property a trust relation, and they can only dispose of its property in the manner required by law, and for purposes that are in keeping with the trust they represent. They have no right to donate the county property or dispose of it so as to virtually amount to a donation. It is a trust estate, and principles of equity will not permit them to be liberal and generous with property they do not own, and which they hold in trust for public purposes. . . .

This interpretation was followed in <u>Hardin County v. Nona Mills Co.</u>, 112 S.W. 822 (Civ. App. 1908), <u>Spencer v. Levy</u>, 173 S.W. 550 (Civ. App. 1915, error ref.) and <u>Dreeben</u>

v. Whitehurst, 68 S.W.2d 1025 (Comm.App. 1934). As evidenced by Opinion No. 0-2660, a copy of which is enclosed, this office has consistently followed the construction of Article 1577 announced in the cited cases.

Therefore, it is the opinion of this office that the Commissioners Court of El Paso County was without authority to convey the land in question by the method employed and that the deed executed by the County Judge and the agreement entered into between the County and the City are invalid.

The authority of the City of El Paso to acquire by condemnation the fee simple title to the subject property is governed by Section 5 of Article XI of the Constitution of Texas, providing for the adoption of charters by home rule cities, by Section 15 of Article 1175, Vernon's Civil Statutes, enumerating the powers granted to such cities, and by the provisions of its charter. Section 15 of Article 1175 reads, in part, as follows:

> "15. To have the power to appropriate private property for public purposes whenever the governing authorities shall deem it necessary; . . . and to acquire lands within and without the city for any other municipal purpose that may be deemed advisable. . . . The power of eminent domain hereby conferred shall include the right of the governing authority, when so expressed, to take the fee in the lands so condemned and such power and authority shall include the right to condemn public property for such purposes."

However, this general grant of authority by the Legislature to home rule cities to condemn public lands, "for any other municipal purpose that may be deemed advisable" must yield to the limitation on that authority expressed by the Texas Supreme Court in Sabine & E. T. Ry. Co. v. Gulf & I. Ry. Co. of Texas, 92 Tex. 162, 46 S.W. 784 (1898), wherein the Court recognized the general rule that, unless express authority is given by the statute to condemn property previously dedicated to a public use, such authority cannot be implied from the general power conferred by law when such condemnation would practically destroy the use to which the property has been devoted unless the necessity be so great

as to make the new use of paramount importance to the public, and it cannot be practically accomplished in any other way. This doctrine was followed and the power of condemnation recognized where the proposed use would not destroy or materially interfere with the prior use in Texas Midland R. R. v. Kaufman County Imp. Dist. No. 1, 175 S.W. 482 (Civ. App. 1915, error dism.), Texas & N.O.R. Co. v. City of Beaumont, 285 S.W. 944 (Civ. App. 1926, error ref.), Central Power and Light Co. v. Willacy County, 14 S.W.2d 102 (Civ. App. 1929) and Snellen v. Brazoria County, 224 S.W.2d 305 (Civ. App. 1949, error ref. n.r.e.). The following cases concern express statutory authority: Ft. Worth & R. G. Ry. Co. v. Southwestern Telegraph & Telephone Co., 96 Tex. 160, 71 S.W. 270 (1903) and Fry, et al v. Jackson, et al, 264 S.W. 612 (Civ. App. 1924). Injunctions have been upheld against condemnation of land used for public purposes unless the prior use is protected in Ft. Worth Improvement Dist. No. 1 v. City of Ft. Worth, 106 Tex. 148, 158 S.W. 164 (1913) and Harris County Drainage Dist. No. 12 v. City of Houston, et al, 35 S.W. 2d 118 (Comm. App. 1931).

In view of the above, it is the opinion of this office that the City of El Paso may condemn the county's interest in the public land in question if such right is so expressed in the city charter and if the proposed use will not materially interfere with or destroy the prior use, or if the proposed use is of paramount public importance and cannot practically be accomplished in any other way. The determination of these questions of fact is not within the purview of this office. Even though the City may, under the conditions stated, exercise the right of eminent domain in this situation, such action would not validate the action of the commissioners' court in agreeing to convey and conveying the land in a manner other than that provided by statute.

Since the federal government has expressed its consent to the city's ownership and proposed use of the 1.67 acres for public purposes only, the right of the city to acquire the fee simple title to the subject land must be considered in connection with the reversionary interest retained by the United States in the original deed to the County of El Paso, providing that, ". . . whenever and in the event that the County of El Paso shall cease to utilize the said described premises wholly for public recreational park purposes, then and thereupon this conveyance shall be null and void, and the said land and premises, together with all improvements thereon and appurtenances there-

unto in anywise belonging or appertaining shall absolutely revert to and revest in the United States of America; and no act or omission on the part of the United States of America shall be a waiver of the enforcement of such condition; . . ." In the case of Utah Power & Light Co. v. United States, 230 Fed. 328 (C.C.A.8th, 1915), wherein the power company contended that the land of the United States within the State of Utah was subject to the laws of the state and its power of eminent domain, the Circuit Court of Appeals held that the public lands of the United States were not subject to the state power of eminent domain, either directly or indirectly, without the consent of the United States.

Your fourth question is quoted as follows:

". . . assuming that the deeds and agreement submitted herewith are valid . . . would the city have the right to pump . . . water from the County Park lake for fire training purposes?"

In view of our opinion that the deed and agreement are invalid, we do not answer this question.

### SUMMARY

The Commissioners Court of El Paso County was without authority to reconvey to the United States of America land previously dedicated and used for public park purposes in a manner not authorized by law, and the deed executed by the County Judge for this purpose is invalid. The City of El Paso may condemn the county's interest in the public land in question if the proposed use will not materially interfere with or destroy the prior public use, or if the proposed use is of paramount public importance and cannot practically be accomplished in any other way.

Yours very truly,

WILL WILSON
Attorney General of Texas

By: Dudley D. McCalla
Dudley D. McCalla
Assistant

DDM:mm/hmc

Honorable Jack N. Fant, Page 9 (WW-1040)


APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

William H. Pool, Jr.
Elmer McVey
Joe B. McMaster
Linward Shivers

REVIEWED FOR THE ATTORNEY GENERAL
BY:   Leonard Passmore