CITY OF BROWNWOOD v. BROWN TELEGRAPH & TELEPHONE
COMPANY.

No. 2517.   Decided June 18, 1913.

**1.—Telephone—Right to Erect in City Street—Statute.**

Article 1231, Rev. Stats., 1911, granting to telegraph companies the right to·
erect their poles, wires, etc., in public roads and streets applies to long distance
telephone companies as well.   Corporations organized for the latter purpose un-
der article 641, subdiv. 8, Rev. Stats., come within the meaning of "telegraph"
lines are there used.  San Antonio & A. P. Ry. Co. v. Southwestern Tel. &
Telep. Co., 103 Texas, 313, followed.   (P. 119.)

**2.—Same—Regulation of Rights by City.**

The right of a telegraph or of a long distance telephone company, under
article 1231, Rev. Stats., to erect its poles, wires, etc., in the city streets is
restricted to such manner of use as not to incommode the public, and is sub-
ject to the power of regulation by the city authorities granted by art. 1235,
Rev. Stats., 1911.   But with these limitations the power of such corporation
to so use the streets is absolute, and the authority of the city to regulate·
gives it no power to deny the right to use.   (Pp., 119, 120.)

**3.—Same—Deposit of Indemnity—Certified Check.**

A city ordinance requiring of a telephone company a deposit of cash to·
indemnify the city against damage from failure to erect its poles and wires in
such places and manner as the city authorities should approve was complied
with by the deposit of a certified check in the required amount, instead of
money.   (P. 120.)

**4.—City—Telephone—Acceptance of Ordinances.**

The city had the right to enforce reasonable ordinances regulating the·
use of its streets by a telephone company whether acceptable to the company
or not; but it could not require of the latter the filing of a written acceptance
of its ordinances as a condition of the right to erect the lines.   (P. 120.)

**5.—City—Telephone—Refusal to Permit Erection—Injunction.**

A long distance telephone company which complied with the statute and
the ordinances of a city regulating its right to erect its line in the streets
could not be deprived of its right by the refusal of the city council to approve
the locations designated by the company for the erection of. poles, wires, etc.,
shown by the plans submitted, or to suggest objections thereto or other loca-
tions.  And on the threat of the city authorities to prevent, by the arrest of
its employees, the construction of its lines, injunction against such proceedings
by them was the proper and only adequate remedy.   (P. 120.)

**6.—Decision Limited.**

The rulings herein are limited to determining the rights of defendant in
error · as a long distance telephone company, and do not determine such ·ques-
tions as applied to a local telephone company.   (P. 120.)

Error to the Court of Civil Appeals, Third District, in an appeal
from Brown County.

The telephone company sued the city for and obtained an injunction.
The judgment was affirmed on defendant's appeal, and thereupon it
obtained a writ of error.

*Paul Harrell,* City Attorney, and *Harrison & Wayman (Chilton &
Chilton* also filed printed argument), for plaintiff in error.—The busi-

ness of a telephone line, so far as concerns the occupation of city streets, is so radically different and so much more extensive than the customary occupation of such streets by a telegraph line that the statute conferring the privilege to set poles upon telegraph companies should not be held to apply to telephone companies.   Home Tel. Co. v. Nashville, 118 Tenn., 19; Davis v. Tel. & T. Co., 57 Pac., 764, 59 Pac., 698; Farmers Tel. Co. v. Washita, 133 N. W., 361; East Boyer Tel. Co. v. Town of Vail, 136 N. W., 120; State ex rel. Tel. & T. Co. v. City of Spokane, 63 Pac., 1116.

The general incorporation law delegated to cities organized thereunder a power over their streets which is not subordinate to the telegraph statute, but which is broad enough to support an ordinance requiring the consent of the city council to the occupation of its streets by a telephone company.   City of Memphis v. Postal Tel. Co., 145 Fed., 602; Farmers Tel. Co. v. Washita, 133 N. W., 361.

The facts alleged in appellee's petition showed three full, adequate and complete remedies at law; first, by defeating the threatened criminal prosecution on its merits, in the trial court; second, by testing the validity of the ordinances by habeas corpus; and, third, mandamus, to compel action by the city council.   Plaintiff's petition sought to restrain the prosecution of itself, its agents, servants and employees for crimes and misdemeanors under alleged void ordinances, but did not show that any property rights belonging to it would be interfered with, jeopardized or lost, and thus failed to show any jurisdiction in a court of equity to grant the relief prayed.   Rev. Stats., arts. 698, 702; City of Austin v. Cemetery Association, 87 Texas, 330; Western U. Tel. Co. v. Richmond, 224 U. S., 160; Wade v. Nunnelly, 19 Texas Civ. App., 256; Greiner-Kelly Drug Co. v. Truitt, 97 Texas, 377; Kissinger v. Hay, 113 S. W., 1005, 52 Texas Civ. App., 295; City of Galveston v. Mistrot, 104 S. W., 417.

The right to designate where appellee should set its poles in the streets of the City of Brownwood, the character of poles, height of poles, etc., being legislative functions vested by Revised Statutes, art. 702 in the city council of the City of Brownwood, the trial court had no jurisdiction to, either directly or indirectly, exercise said functions, or review or regulate the exercise of the same, in this character of proceeding. Therefore, the preliminary writ of injunction should not have issued in this case.   New York, etc., Tel. Co. v. Bound Brook, 48 Atl., 1022; Michigan Tel. & Tel. Co., v. St. Joseph, 80 Am. St., 520, and cases cited therein, on pages 522 and 523; 37 Cyc., 1629.

The ordinances set out in appellee's petition and therein alleged to be void, were, in fact, valid, and a lawful exercise of the city's police powers and the powers expressly vested in it by the laws of Texas; and appellee, as shown in its said petition, had not complied therewith in the proceedings before the city council on its application for permit, designation of place, etc.   Rev. Stats., art. 702; Rev. Stats., title 18, chapter 4, and especially the following articles thereof: 419, 420, 423, 426, 453, 460, 461 and 464; Village of Jacksonville v. South Michigan

Telep. Co., 130 Am. St., 562, and cases cited in opinion and note thereto; New York & N. J. Telep. Co. v. Town of East Orange, 8 Atl., 289; City of Lancaster v. Briggs, 96 S. W., 314-315; City of St. Louis v. Western U. Tel. Co., 148 U. S., 92; City of Allentown v. Western Union Telegraph Co., 33 Am. St., 820; Atl. & P. Tel. Co. v. Philadelphia, 190 U. S., 160; Western U. Tel. Co. v. Borough of New Hope, 187 U. S., 419; Tel. Co. petition, 132 Am. St., 750; 37 Cyc., 1633-1635, and cases cited in notes.

*E. B. Anderson* and *I. J. Rice,* for defendant in error.—Appellee having shown itself entitled to an injunction under the principles of equity as provided by statute and also threatened irreparable injury to property rights the application was properly granted whether appellee has an adequate remedy at law or not. Rev. Civ. Stats., 1911, art. 4643; Gear v. City of Rosenberg, 115 S. W., 653; Denton v. McDonal, 135 S. W., 1148; City of San Antonio v. Salvation Army, 127 S. W., 860; Sumner v. Crawford, 41 S. W., 994; Sullivan v. Dooly, 73 S. W., 82; Ex parte Warfield, 50 S. W., 933.

Appellee having shown injury to a property right as well as threatened prosecution was entitled to an injunction. City of Austin v. Cemetery Association, 87 Texas, 330; also authorities above cited. 135 S. W., 1148.

Under the State law the city had the right to designate where on its streets the poles of such corporations as appellee should be set, also to specify the height and kind of poles, height of wires, etc. This it had done by the ordinances quoted, making no exception of any of its streets. Appellee had the right to build its line without making application to the council at all by complying with the specifications contained in the ordinances in building such line. Sayles' Rev. Stats., art. 702; Michigan Tel. Co. v. Benton Harbor, 47 L. R. A., 104.

Appellee's right to build into the city does not depend upon its compliance with said ordinances. City of Texarkana v. Southwestern Tel. & Tel. Co., 106 S. W., 915; 20 Am. & Eng. Ency. of Law, 1139; 27 Am. & Eng. Ency. of Law, 1007.

If the application of appellee, its said deposit and plat, were not in all things sufficient appellant city is estopped from taking any advantage of such errors for the reason its council refused to state when requested what defects if any they found in the same so that such errors might have been corrected or eliminated before final action on same.

MR. CHIEF JUSTICE BROWN delivered the opinion of the court.

The writ of error was granted in this case in order that this court might have the benefit of a discussion of the issues of law which are important. We have heard counsel on each side present ably and elaborately the issues as they respectively believe them to be applicable to the facts.

In his usual careful and thorough manner Judge Rice has stated the case and carefully analyzed the facts. We adopt his statement as follows:

"This suit was brought by appellee to restrain by injunction the officers and agents of appellant from prosecuting, arresting or in any manner interfering with appellee or its servants in the erection and construction of a telephone line in and upon certain streets of the City of Brownwood, wherein a temporary restraining order was issued as prayed for.

"Prior to the institution of this suit, appellee, which is duly incorporated under the laws of this State for conducting a telegraph and telephone business, filed with the city council of the City of Brownwood, which is a city incorporated under the general laws of this State, its petition, stating that its domicile was at Goldthwaite, Texas, and that it desired to build a telephone line for long distance service from the City of Temple, along the right of way of the Gulf, Colorado & Santa Fe Railway to Brownwood, and presented therewith, for its inspection and approval, a map or plat of the route of the proposed telephone line into said city, showing the streets and alleys to be occupied and the location of each pole and fixture to be constructed, representing that, in accordance with said map they would erect thirty-six poles, for which it tendered a certified check for the sum of $90, payable to the city treasurer of said city, for the purpose of holding the city harmless against any damage that might be done to its sidewalks, streets or alleys in the erection thereof, to be returned when the city marshal should report that the conditions of the ordinances relating to telephone lines shall have been complied with.  Further representing that it desired to erect poles and fixtures for the aforesaid line under the provisions of the ordinances having reference to the construction of telephone lines, the same being articles 108 to 116, inclusive, of the civil ordinances of said city, declaring its acceptance of all the provisions of said ordinances, and agreeing to abide by all ordinances and regulations thereafter to be adopted relating to such lines; and further agreeing to permit the City of Brownwood to occupy and use the top cross-arm of any poles so to be erected by it, for telephone, telegraph, police calls or fire alarm purposes, free of charge; praying that said city council accept the tender so made, approve the map and plat and the proposed setting and construction of the poles and fixtures; and in the event said plat or route may, for any reason, be objectionable, or any part of the same, then asking the council to point out such objection, to the end that such plat and route along the streets and alleys of the city may be changed to meet such objection.

"Said city had theretofore enacted the following ordinances relating to the construction of telephone lines, designated under the head of 'Criminal Ordinances,' towit:

" 'Art. 108.  All telegraph and telephone poles as herein provided shall be of sound timber, not less than five inches in diameter at the upper end, straight, shapely and of uniform size, neatly planed or shaved and thoroughly painted with lead and oil, paint of such coloring as the city council may direct, and shall be supplied with iron steps commencing within twelve feet of the ground and reaching the arms sup-

porting the wires.    Said wires shall be run at a height of not less than
twenty-four feet from the ground, and the arms lengths shall be deter-
mined by action of the city council.    When poles or other fixtures are
erected on a street they shall be placed, if practicable, on the outer edge
of the sidewalk just inside of the curbstone or a line dividing the lots
of property owners, but in no case to be placed so as to interfere with,
or damage the curbstone, trees or other public or private property.'

" 'Art. 110.    That any person or corporation desiring to erect or
construct said poles or fixtures, shall make a deposit of $2.50 for each
and every pole to be erected, and the same shall be held by the city
treasurer for the purpose of holding the city harmless against any dam-
age caused to sidewalks, streets and alleys in the erection of poles, and
the said deposit shall be returned to the parties making the same when
the city marshal shall report that the conditions of this chapter have
been complied with, and such persons shall first submit to the city
council for its approval a map or plat of the route of the proposed line
or lines, showing the streets and alleys to be occupied and location of
each pole or fixture to be constructed.    Unless the city council approves
of the same, such person or corporation or their agents shall have no
right to erect such poles, or construct such fixtures.    All work pertain-
ing to the erection or construction of such poles on any sidewalk or
alley shall be done under the supervision of the city council, and the
pavement shall be restored to its original condition as soon as possible.'

"Article 112 provides that 'all persons, companies or corporations desir-
ing to erect poles and fixtures under the provisions of this ordinance shall
first file, in the office of the city secretary a written acceptance of all the
provisions of this ordinance; also a written agreement permitting the
City of Brownwood to occupy and use the top cross-arms of any pole
erected for the use of said city for telegraph, telephone, police calls or
fire alarm purposes, free of charge.'

"Article 114 of said ordinances provides that 'every violation of any
of the provisions of the articles under the subject of "offenses pertaining
to poles and wires" shall constitute a misdemeanor, and the persons or
companies or corporations, or any employee, agent, local manager or
officer thereof in Brownwood violating any of said provisions shall, upon
conviction in the corporation court be fined in any sum not less than
twenty-five dollars nor more than one hundred dollars for each offense.'

"On the 16th of April, 1912, by motion, said petition was referred
to the street committee to investigate and make report at the next regular
meeting of said council, which on the 7th of May thereafter reported,
to the effect that they had investigated the route over which said com-
pany proposed to enter said city, and that they found no objection to
the use of the streets and alleys for the construction of said line into
the City of Brownwood as designated on the map of said route, pro-
vided that the construction of the same complied in all respects with the
ordinances relative to the construction of such lines in said city, and
that the legal rights of all other telephone, telegraph and electric light
companies be respected.    Hearing upon this report was postponed until

the 21st day of May thereafter; whereupon, after being duly considered, the council refused to concur therein, and denied such permit to the company, ordering that its petition, map and certified check be returned. At this time appellee had already constructed its line from Goldthwaite to the City of Brownwood, some $700 worth of material, with the view of constructing its line in said town; but was prevented from so doing by threats of prosecution on the part of the officers of said city, in the event it undertook so to do. Thereupon appellee presented its petition to the district judge, setting up these facts, as well as others which may hereafter be noticed, praying for a writ of injunction as heretofore indicated, which was granted and the case set for hearing."

Article 1231, Revised Statutes, 1911, reads: "Corporations created for the purpose of constructing and maintaining magnetic telegraph lines are authorized to set their poles, piers, abutments, wires and other fixtures along, upon and across any of the public roads, streets and waters of this State, in such manner as not to incommode the public in the use of such road, streets and waters."

In San Antonio & A. P. Ry. Co. v. Southwestern Tel. & Tel. Co., 93 Texas, 313, 55 S. W., 117, 49 L. R. A., 459, 77 Am. St., 884, this court said: "We conclude that, when the Legislature of 1891 enacted the law in its present form, it intended to express that 'telephone' was within the broad meaning of 'telegraph,' and that corporations formed under subdivision 8 of article 641, Revised Statutes, are 'created for the purpose of constructing and maintaining magnetic telegraph lines,' and are authorized by article 699 to condemn right of way for their lines."

We could cite many authorities in support of that conclusion but deem it unnecessary and will proceed upon the assumption that the language of the statute includes long distance telephones, but we express no opinion as to the rights of local telephone companies or the local business of long distance companies.

It will be observed that the grant to such corporations by article 1231 is qualified by this important language, "in such manner as not to incommode the public in the use of such road, streets and waters." The effect of the limiting clause is to declare the right of the public to be superior to the rights granted to the corporation.

Article 1235, Revised Statutes, 1911, reads: "The corporate authorities of any city, town or village through which the line of any telegraph corporation is to pass may, by ordinance or otherwise, specify where the posts, piers or abutments shall be located, the kind of posts that shall be used, the height at which the wires shall be run; and such company shall be governed by the regulations thus prescribed; and, after the erection of said telegraph lines, the corporate authorities of any city, town or village shall have power to direct any alteration in the erection or location of said posts, piers or abutments, and also in the height at which the wires shall run, having first given such company or its agents opportunity to be heard in regard to such alteration."

It is apparent that the right of the telephone company to pass through

the city or town, over and upon its streets, is absolute, and a city has no authority to deny that right. The interest of the public in convenient service by such means of communication is the basis of the grant and is superior to any private interest. On the other hand the interest of the city in the manner in which the corporation exercises its right is the foundation of the authority vested in the city to control the occupancy and use of the streets by such corporations and a reasonable exercise of the power is equally absolute. The limitation embodied in the grant to the corporation would alone be sufficient to subject it to a reasonable restraint. But the grant to the authorities of the city by article 1235 invests the municipal government with power to enforce any reasonable regulations as to the use of the streets by the city, but such city can not use its power to regulate in such manner as to deny the corporation the right to pass through the town and in so doing to use the streets in "such way as not to incommode the public."

It appears that the telephone company complied with the requirements of the city, except that it deposited a certified check instead of money and accepted "civil" ordinances. The check was equal to cash and the acceptance of civil ordinances embraced all that were regulatory. But the city had no authority to require the telephone company to accept its ordinances as a condition precedent to entering the city. The right and duty of the city was to enforce such ordinances as prescribed reasonable regulations whether acceptable to the telephone company or not. When the city refused to take any action in the matter it abandoned its right to prescribe the streets to be used and the details of construction and the telephone company had the right to construct on the streets as shown upon the plat presented in compliance with the city ordinance. The threat to prosecute and punish the employees of the telephone company was unreasonable, arbitrary and obstructive to a degree that justified the injunction.

The telephone company will be authorized to construct its line over the streets of the city under and in accordance with the reasonable requirements of the city. The effect of the injunction will not be to take from the city its right of control over its streets, sidewalks, in fact, all public places in the city. The telephone company is entitled to all the privileges necessary to its construction and operation as a "distance telephone." But it is not to be inferred from this opinion that this company can, without consent of the city, transact the business of a local company. Our conclusions have been reached by applying to the long distance telephone the rules of law which would be applicable to a telegraph line under similar conditions and we expressly reserve from any implication the relative rights of local telephone companies and city governments. Nor do we intend to imply any limitation upon the authority of a city in the regulation of placing of poles, etc., or placing wires underground when necessary to avoid "incommoding" the public. We deem it proper to limit this opinion to the class of cases to which this belongs. The trial court did not err in granting and perpetuating the injunction; it was the only fully adequate remedy and was fully

justified by the arbitrary and unreasonable methods of the city government.

Finding no error in the judgment of the Court of Civil Appeals it is accordingly affirmed.

*Affirmed.*