Timothy **MELLON**, Plaintiff,

v.

**SOUTHERN PACIFIC TRANSPORT COMPANY and MCI Communications, Inc., Defendants.**

No. P–89–CA–48.

United States District Court, W.D. Texas, Pecos Division.

March 28, 1990.

---

Rod Price, El Paso, Tex., for plaintiff.

Mark Calhoun, Dallas, Tex., for defendants.

## MEMORANDUM OPINION
## AND ORDER

BUNTON, Chief Judge.

Came on this day to be heard the Motion of the Defendants Southern Pacific Transport Company ("Southern Pacific") and

MCI Communications, Inc., ("MCI") for Reconsideration of the Order denying Summary Judgment in the above-captioned cause. Plaintiff responded in a timely manner. Upon consideration of the pleadings, evidence offered by the parties in support of their arguments, and the controlling law, the Court is of the opinion Defendant's Motion for Reconsideration of the Order Denying Summary Judgment is meritorious and should be granted. Plaintiff has failed to demonstrate that under controlling law there is a genuine dispute on a material fact issue.

## FACTUAL BACKGROUND

Southern Pacific's predecessor was given a railroad right-of-way in the form of a railroad easement, by the State of Texas, on the property in question in this suit. Southern Pacific now owns this easement or right-of-way. Timothy Mellon ("Mellon"), purchased the property in 1988 subject to Southern Pacific's easement.

Southern Pacific entered into an agreement with MCI granting MCI an easement on the property, provided Southern Pacific install a Fiber Optic Cable 36–40 inches beneath the surface within the railroad right-of-way. This agreement permits MCI to use a portion of the cable as part of MCI's own nationwide telecommunications system, but also obligates MCI to provide telecommunications capacity to Southern Pacific for railroad communication purposes.

Mellon contends the use of the right-of-way for the benefit of a third party constitutes an additional burden on Southern Pacific's easement, and filed this suit alleging an abuse of the right-of-way, trespass to try title, inverse condemnation and conversion and unjust enrichment.

## STANDARD ON MOTION FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show the moving party to be entitled to judgment as a matter of law." Rule 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing there is a genuine issue for trial.

Thus, the focus of this court is upon disputes over material facts; facts which might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 272 (5th Cir.1987), *cert. denied*, 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 107 (1987), and the cases cited therein.

The Supreme Court's 1986 trilogy of summary judgment cases clarified the test for granting summary judgment. In *Anderson v. Liberty Lobby, Inc.*, the Court stated the trial court must consider the substantive burden of proof imposed of the party making the claim. In the case before this Court, the Plaintiff has the burden with respect to his claims and Defendants have the burden with respect to defenses and claims for affirmative relief they raise. Plaintiff has the burden to demonstrate that it retains an enforceable interest in the easement and the Defendant is engaging in conduct which is both unreasonable and burdening Plaintiff's adjoining property.

*Anderson v. Liberty Lobby* requires this Court to substantively evaluate the evidence offered by the moving and non-moving party to determine whether the evidence raises a "material" fact question which is "genuine". The *Anderson* court defined "material" as involving a "dispute over facts which may affect the outcome of the suit under the governing law."

In a second case, the Supreme Court reiterated where the party moving for summary judgment establishes prima facie there is no genuine issue as to any material fact, the non-moving party must then come forward with "specific facts" showing a genuine issue for trial. It must be "more

than simply ... there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The third case in the trilogy, *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) held where the moving party shows the opposing party is unable to produce the evidence in support of its case, summary judgment is appropriate. In *Celotex Corp.*, it was not necessary for the motion for summary judgment to be supported by affidavits or other material specifically negating the non-moving party's claim so long as the District Court was satisfied there was an absence of evidence to support it. At that point, the burden shifted to the non-moving party to produce evidence in support of its claims; if it did not produce any, summary judgment was required.

This Court has demonstrated its willingness to allow a non-moving party his day in court in borderline cases where, under the governing law or reasonable extensions of existing laws, the hearing of some testimony would be helpful to understanding the proper application of the law. Such is not the case in the suit *sub judice*, as the Court is persuaded there is no genuine dispute on a material issue preventing the entry of Summary Judgment and the Plaintiff's claims must fail as a matter of law.

## DISCUSSION

The Defendants in their Motion for Reconsideration of the Order Denying Summary Judgment suggest: (1) railroads, such as Southern Pacific may enter into an agreement with a telecommunications company, such as MCI for the installation of fiber optic cable beneath the railroad's right-of-way, even if the cable is to be utilized, in part, for commercial, non railroad uses; (2) if the right to contract does not exist between MCI and Southern Pacific, MCI has the statutory power under Article 1417 to condemn Southern Pacific's right of way "in fee or less"; and (3) federal law preempts state law regarding the rights of railroads and telecommunications companies.

## INCIDENTAL USE DOCTRINE

■ The Defendants suggest the "incidental use doctrine" permits Southern Pacific to grant MCI an easement in Southern Pacific's right-of-way without entitling the owner of the subservient estate to compensation. The incidental use doctrine allows railroads to contract with third parties and controls the permissible scope of railroad authorized right-of-way uses and allows third party commercial uses of the railroad right of way. *See, Grand Trunk R.R. v. Richardson*, 91 U.S. 454, 468–69, 23 L.Ed. 356 (1875). In *Grand Trunk*, the Supreme Court held certain structures, though not used exclusively for railroad purposes, were properly located on railroad property. The *Grand Trunk* Court stated:

> It must be admitted that a railroad company has the exclusive control of all the land within the lines of its roadway, ... we are not prepared to assert that it may not license the erection of buildings for its convenience, even though they may be also for the convenience of others ... Such erections would not have been inconsistent with the purposes for which its charter was granted ... And, if the [railroad] company might have put up the buildings why might it not license others to do the same thing ...

*Id.*

The 1899 Supreme Court case of *Hartford Fire Insurance Co. v. Chicago, M & St. P.R. Co.*, 175 U.S. 91, 99, 20 S.Ct. 33, 36, 44 L.Ed. 84 (1899), also holds a railroad right-of-way may be occupied by others, in the manner in which the railroad considers best fitted to promote the public use. "It may, in its discretion, permit them (right-of-ways) to be occupied by others with structures convenient for the receiving and delivery of freight upon its railroad, so long as a free and safe passage is left for the carriage of freight and passengers." *Id.*

In *Western Union Telegraph Co. v. Pennsylvania Railroad*, 195 U.S. 540, 570,

25 S.Ct. 133, 141, 49 L.Ed. 312 (1904), the Court made the following statement:

> A railroad right-of-way is a very substantial thing. It is more than a mere right of passage. *It is more than an easement.* We discussed its character in New Mexico v. United States Trust Co., 171 U.S. 171. We there said (p. 183) that *if a railroad's right of way was an easement it was one "one having the attributes of the fee, perpetuity and exclusive use and possession;* also the remedies of the fee, and, like it corporeal, not incorporeal property."

195 U.S. at 570, 25 S.Ct. at 141 (emphasis added).

Texas law permits a wide range of uses by a railroad in its right-of-way, and approved the incidental use of railroad rights-of-way specifically with regard to the erection of telegraph and telephone lines. See *Ft. Worth & R.G. Ry. Co. v. Southwestern Telegraph & Telephone Co.*, 96 Tex. 160, 71 S.W. 270 (1903). In *Ft. Worth & R.G. Ry. Co.*, the Court stated:

> The reasons which actuated the legislature are easily conjectured. Telegraph lines were in existence upon rights of way of railway companies throughout the country, and it was common knowledge that they did not impede but rather facilitated, the business of the carriers.... So general has been the opinion that telegraph lines can exist upon the rights-of-way of railroad companies, consistently with the rights of the latter.

*Id.*, 71 S.W. at 275.

 The railroad may make many uses of its right-of-way including the building of side tracks, building, telegraph lines, and other structures necessary for its business. *See Olive v. Sabine & E.T. Ry. Co.*, 11 Tex.Civ.App. 208, 33 S.W. 139, 142 (Tex. Civ.App.—1895). The term "telegraph" has been held, when used in a statute to include the telephone. *See San Antonio & A.P. Ry. Co. v. Southwestern Tel. & Tel. Co.*, 93 Tex. 313, 55 S.W. 117, 119 (1900) (legislature intended to express that "telephone" was within the broad meaning of "telegraph"). Telephone, telegraph, and interurban lines are public facilities that were contemplated by the grant of the right-of-way and, therefore, do not constitute an additional servitude; the grant in such use is to the public and the public makes use of it. *Citizens Telephone Co. v. Cincinnati, N.O. and T.P. R. Co.*, 192 Ky. 399, 233 S.W. 901, 903 (1921).

Telephone companies have been permitted to place their cables within a railroad right-of-way so long as they enter into an agreement with the railroad and the use is a reasonable use which does not impermissibly burden the fee owner of the adjoining land. In *Southwestern Bell Co. v. Bigler*, 563 S.W.2d 851, 853 (Tex.Civ.App.—San Antonio 1978, no writ), the Court held the right of telephone companies to bury their long distance telephone lines on the right-of-way of public streets was guaranteed by the same statutes allowing the erection of telephone poles and lines above the surface. MCI's fiber optic cable buried on Southern Pacific's right-of-way pursuant to an agreement with Southern Pacific is the modern application of its antecedent the telegraph line.

The railroad right-of-way also includes the incidental below ground uses of its right-of-way. *See Lo–Vaca Gathering Co. v. Missouri K.T.R.R.*, 476 S.W.2d 732, 739 (Tex.Civ.App.—Austin 1972, writ ref'd n.r.e.) (railroad's permission required to site a buried gas pipeline on the right-of-way); *But cf. Chugach Natives, Inc. v. Doyon, Ltd.*, 588 F.2d 723, 728 (9th Cir. 1978) (subsurface estate refers to the mineral estate, while the surface estate refers to the remainder of the non-mineral estate including subsoil); *United States v. Union Pacific R.R.*, 353 U.S. 112, 77 S.Ct. 685, 1 L.Ed.2d 693 (1957) (the railroad cannot undertake most mineral estate uses of the right-of-way, but can authorize uses of the remainder of the right-of-way); *Great Northern Ry. v. United States*, 315 U.S. 262, 62 S.Ct. 529, 86 L.Ed. 836 (1942).

The test for determining right-of-way uses is whether the subject use is inconsistent with the purposes for which the right-of-way was granted. *United States v. Union Pacific R.R.*, 353 U.S. 112, 77 S.Ct. 685, 1 L.Ed.2d 693 (1957). In *Union Pacific,*

the Supreme Court stated the railroad right-of-way uses which are incidental to, or consequential upon, those things which the legislature has authorized, ought not, unless specifically prohibited, to be held by judicial construction to be ultra vires. *Id.*

■ This Court finds the right-of-way surface includes the non-mineral topsoil that would be occupied by a buried fiber optic line, and the fiber optic cable is an authorized incidental use which is not inconsistent with railroad uses and does not burden the subservient estate retained by the Plaintiff. Plaintiff has not demonstrated under the terms of the easement or under controlling law it has retained an interest in the railroad's easement for which it should receive rents, the Court finds Plaintiff's arguments unpersuasive.

## CONDEMNATION

■ Although this Court has today held Southern Pacific may grant an easement to MCI for the "incidental use" of installing a fiber optic cable, MCI, a telephone company, as a legislatively preferred class of utility, has the power to condemn privately owned property under Art. 1416, Tex.Rev.Civ.Stat.Ann. (Vernon 1980). The right granted to MCI cannot be denied because it may cause damage or inconvenience to Mellon's interests. *See Roaring Springs Town–Site Co. v. Paducah Telephone Co.*, 109 Tex. 452, 212 S.W. 147 (1919); *Accord Bigler*, 563 S.W.2d at 853. The right of the telephone company to bury its long distance line at the location in question is an absolute right subject only to reasonable regulation by the proper authorities. *See City of Brownwood v. Brown Telegraph & Telephone Co.*, 106 Tex. 114, 157 S.W. 1163 (1913). In *City of Brownwood*, the Supreme Court said:

It is apparent that the right of the telephone company to pass through the city or town, or over and upon its streets, is absolute, and a city has no authority to deny that right. The interest of the public in convenient service by such means of communication is the basis of the

grant and is superior to any private interest.

*Id.* Art. 1416 provides as follows:

Corporations created for the purpose of constructing and maintaining magnetic telegraph lines, are authorized to set their poles, piers, abutments, wires and other fixtures along, upon and across any of the public roads, streets and waters of this State, in such manner as not to incommode the public in the use of such roads, streets and waters.

Telegraph companies also have the right of eminent domain to obtain rights-of-way and condemn lands for their own use. See Tex. Rev.Civ.Stat.Ann. art. 1417 (Vernon 1980). As above stated, the Court in *Southwestern Bell Co. v. Bigler*, 563 S.W.2d at 853, extended the application of Articles 1416 and 1417, to the installation of underground cables. It has also been held telephone companies have the same authority to condemn a right-of-way over the property of a railroad it would have to condemn the property of others. *Ft. Worth and R.G. Ry. Co. v. Southwestern Tel. and Tel. Co.*, 71 S.W. at 275 (telephone companies are invested with the same power to condemn property for the construction of their lines as the power to condemn given to telegraph companies). The *Fort Worth and R.G. Ry. Co.* Court added:

... the provisions applicable to telegraph companies, when interpreted as we interpret them authorized only the doing of that, by authority of law, which was being done every day in various parts of the country under such authority or by contract ... that contracts of the character here prohibited were being made between railroad companies and one telegraph company for the exclusive use of rights-of-way. This was the evil to be prevented by this provision, which presupposes that the legislature intended to confer upon telegraph companies generally the right to use rights-of-way of railroad companies for the construction of telegraph lines.

*Id.*, 71 S.W. at 274–275. In light of the foregoing, it is the opinion of this Court and its holding, MCI could have secured an

232

easement from Southern Pacific pursuant to art. 1417.

## PREEMPTION

The Plaintiff argues Texas law is more restrictive than federal law on the rights of railroads and telecommunications companies and the State of Texas granted railroad rights-of-way over the lands in question, not the federal government. In the alternative, even if state law is more restrictive than federal law, this Court today holds Texas State law which regulates railroads is preempted by Federal law to the extent it conflicts with Federal law.

 It is well established that whenever Congress acts within the scope of a delegated power such as that of the Commerce Clause, the Supremacy Clause renders any conflicting state or local law or action void to the extent that there is a conflict. Thus, if the federal statute or regulation is valid and the state law conflicts, or requires an inconsistent outcome, the state law is superseded. *NCNB Texas Bank v. Cowden,* 712 F.Supp. 1249, 1253 (W.D.Tex.1989) A determination of federal preemption under the Supremacy Clause begins with inquiring "whether Congress explicitly or implicitly declared that the states are prohibited from regulating" the subject matter of the state law. *Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 158, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978). The Courts have not determined that any one factor is decisive to determine whether the federal law supersedes or preempts the state law, however, three factors emerge as important: (1) Where the Congress establishes a federal agency or instrumentality to enforce or implement the law, those matters within the agency's jurisdiction are ordinarily deemed preempted. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985); *Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964); cf. *Hillsborough County, Florida v. Automated Medical Labs. Inc.,* 471 U.S. 707, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985). (2) Also, the more comprehensive the federal scheme in the area, the more likely that Courts will find preemption by implication.

*Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982); *Boehringer–Mannheim Diagnostics, Inc. v. Pan American World Airways, Inc.,* 737 F.2d 456, 459 (5th Cir.1984), cert. denied, 469 U.S. 1186, 105 S.Ct. 951, 83 L.Ed.2d 959 (1985). (3) Finally, if the application of the state law places an undue burden on the implementation of the federal regulatory scheme, the state law has been deemed preempted. *California Federal Sav. and Loan Ass'n v. Guerra,* 479 U.S. 272, 281, 107 S.Ct. 683, 689, 93 L.Ed.2d 613 (1987).

Courts have preempted Texas state law on numerous occasions when applying the federal regulatory scheme to railroads. *Missouri Pacific Railroad v. Railroad Commission of Texas,* 850 F.2d 264, 267–268 (5th Cir.1988) *cert. denied* 488 U.S. 1009, 109 S.Ct. 794, 102 L.Ed.2d 785 (1989) (Texas safety regulation preempted by Federal Railroad Safety Act and Locomotive Boiler Inspection Act); *State of Texas v. United States,* 730 F.2d 339 (5th Cir.), *cert. denied* 469 U.S. 892, 105 S.Ct. 267, 83 L.Ed.2d 203 (1984) (Staggers Rail Act, which regulated rate-making, was constitutional and preempted state law); cf. *Railroad Commission of Texas v. United States,* 765 F.2d 221 (D.C.Cir.1985) (Railroad Commission of Texas denied authority to regulate intrastate railroad traffic). The Locomotive Boiler Inspection Act completely preempts the field of locomotive equipment. *Napier v. Atlantic Coast Line R.R. Co.,* 272 U.S. 605, 613, 47 S.Ct. 207, 210, 71 L.Ed. 432 (1926). Congress has specifically authorized railroads to enter into contracts with telephone, telegraph, and cable companies to exchange services. See 49 U.S.C.A. § 10749 (West Supp.1989).

 Because no federal law directly addresses railroad rights-of-way other than the above statute which authorizes contracts with telephone companies, this Court is concerned with implied, rather than express, preemption. The law of implied preemption provides that "where failure of ... federal officials affirmatively to exercise their full authority takes on the character of a ruling that no such [state] regulation is appropriate or approved pursuant to the

policy of the statute, States are not permitted to use their police power to enact such a regulation." *Ray,* 435 U.S. at 179, 98 S.Ct. at 1004–05, *citing Bethlehem Steel Co. v. New York State Labor Relations Board,* 330 U.S. 767, 774, 67 S.Ct. 1026, 1030, 91 L.Ed. 1234 (1947). A finding of implied preemption must follow. An implied preemption under *Ray* arises when the policymaker appears to be saying "we haven't done anything because we have determined it is appropriate to do nothing." *Missouri Pacific Railroad Co. v. Railroad Commission of Texas,* 833 F.2d 570, 576 (5th Cir.1987). Virtually all state regulations affecting the train itself appear preempted by federal law, but Congress when it enacted § 10749 failed to resolve a situation such as this. Under these circumstances, we are compelled to conclude that Federal law impliedly occupies the entire field so as to preclude any application of state law relating to railroad right-of-ways. Accordingly,

IT IS ORDERED, ADJUDGED AND DECREED the Order denying Defendant's Motion for Summary Judgment entered by the Court on January 29, 1990, is hereby reversed.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED the Defendant's Motion for Summary Judgment is hereby, in all things, GRANTED.