Office of the Attorney General · State of Texas



February 7, 2000

The Honorable Tim Curry
Tarrant County Criminal District Attorney
401 West Belknap Street
Fort Worth, Texas 76196-0201

Opinion No. JC-0179

Re: Whether the Tarrant Regional Water District may lease to a private telecommunications carrier excess capacity in a fiber-optics cable installed to operate the Water District's pipeline, and related questions (RQ-0115-JC)

Dear Mr. Curry:

The Tarrant Regional Water District (the "Water District") has acquired pipeline easements running from Tarrant County to reservoirs located in Henderson, Navarro, and Freestone counties in east Texas. *See* Letter from Honorable Tim Curry, Tarrant County Criminal District Attorney, to Honorable John Cornyn, Attorney General of Texas, at 1 (Sept. 20, 1999) (on file with Opinion Committee) [hereinafter "Request Letter"]. To run water from the reservoirs to Tarrant County, the Water District intends to install a water pipeline and a fiber-optics cable, which will operate the pipeline with a "Supervisory Control and Data Acquisition (SCADA) System." *Id.* at 2. The Water District will have excess capacity in the fiber-optics cable for many years. *See id.* You ask generally whether the Water District may lease to a telecommunications carrier "all or part of the excess capacity of the bandwidth provided by the fiber optics cable" until the Water District needs the additional capacity. *See id.* Because the Water District has statutory authority to lease property to any person, *see* TEX. WATER CODE ANN. § 49.225 (Vernon Supp. 2000), we conclude that the Water District is not precluded by statute from doing so, although whether any particular easement permits the installation or lease of fiber-optics cable is a question of fact. You ask us to assume, in reaching this conclusion, that a telecommunication carrier's use of part of the capacity of the fiber-optics cable "will not cause the cable to be any larger or cause any more detriment to the landowner's land than if the use of the fiber optics cable was limited to the SCADA operation of the water pipeline, which the Water District has determined to be necessary." *Id.* at 2.

You specifically ask seven questions:

> 1. Does the language of the subject pipeline easements submitted [with the Request Letter] authorize the Water District as a matter of law to install a fiber optics cable for the purpose of operating its pipelines with a SCADA system?

2.      Is the test for answering the above a factual inquiry as to whether or not the fiber optics cable use of the pipeline easement was "reasonably within contemplation during the acquisition of the right-of-way" or "whether the grantor could have reasonably contemplated such uses as within the easement at the time he granted it"?

3.      Are the contemplated <u>additional</u> uses of the fiber optics cable by leasing the excess capacity to a telecommunication carrier a "private use" prohibited by Texas law?

4.      Even if the lease of the excess fiber optics cable capacity to a telecommunication carrier is "a private use," is the additional use still permitted under the "apportionment of easements doctrine"?

5.      Is such fiber optics cable sharing also authorized by the powers expressly delegated to the Water District by the Texas Legislature or those powers which exist by implication?

6.      Is the additional use of the fiber optics cable by a telecommunication carrier, assuming that it causes no more damage to the land already burdened with a pipeline easement than if the cable were limited to the Water District's authorized SCADA use, "an additional burden" which entitles the landowner to additional compensation, or an "incidental use" for which the landowner receives no additional compensation?

7.      Is this an illegal "recoupment"?

Request Letter, *supra*, at 3, 8, 16, 18, 20.

You first ask us to construe the language of the pipeline easements, and your second question suggests why this office cannot do so: because it involves a "factual inquiry." You tell us that the easements:

specifically provide for (1) ". . . all necessary electric and communication lines . . . for the purpose of operating and maintaining the said pipeline"; (2) ". . . one water transportation pipeline, with all equipment and appurtenances incidental thereto . . ."; and (3) ". . . one water transportation pipeline and appurtenant facilities, including all necessary electric and communication lines . . . as may be necessary for the purposes of operating such pipeline."

*Id.* at 2.

Whether any particular easement allows the Water District to install a fiber-optics cable at all or to lease excess fiber-optic cable capacity requires a court to, among other things, construe the documents and examine the grantor's intentions. "The test whether an easement acquired by a public body may be burdened with" a particular use is whether the grantor reasonably could have contemplated such a use as within the easement at the time the easement was granted. Tex. Att'y Gen. Op. No. DM-420 (1996) at 9 (citing *City of Sweetwater v. McEntyre*, 232 S.W.2d 434 (Tex. Civ. App.–Eastland 1950, writ ref'd n.r.e.) and *Milam County v. Akers*, 181 S.W.2d 719 (Tex. Civ. App.–Austin 1944, writ ref'd w.o.m.). The understanding of the parties to the easement may be relevant to the documents' construction, and that understanding cannot be decided without examining factual evidence. *See* Tex. Att'y Gen. Op. No. DM-420 (1996) at 9. This office cannot resolve fact-based questions. *See, e.g.,* Tex. Att'y Gen. Op. Nos. JC-0032 (1999) at 4 (stating that question of fact is beyond purview of this office); JC-0027 (1999) at 3 (stating that questions of fact cannot be addressed in attorney general opinion); JC-0020 (1999) at 2 (stating that investigation and resolution of fact questions cannot be done in opinion process).

Skipping to your fifth question, we conclude as a matter of law that the proposed fiber-optics cable lease may be within the Water District's express statutory powers. Section 49.225 of the Water Code explicitly authorizes a general-law district, including the Water District, to lease real or personal property to any person. *See* TEX. WATER CODE ANN. § 49.225 (Vernon Supp. 2000). "The lease may contain the terms and provisions that the board determines to be advantageous to the district." *Id.* The proposed lease of excess fiber-optics cable capacity is a lease of property to a person under section 49.225.

The fiber-optics arrangement you describe is analogous to the arrangement this office approved in Attorney General Opinion H-1217. *See* Tex. Att'y Gen. Op. No. H-1217 (1978) at 1. There, the Lower Colorado River Authority, a water district organized under article XVI, section 59 of the Texas Constitution, asked whether it could permit a private corporation, Entex, to use part of the natural-gas pipeline owned by the River Authority and running to the River Authority's electric generating plant. *See id.* at 1. The statute applicable to the River Authority, former Water Code section 51.137, *repealed by* Act of May 25, 1995, 74th Leg., R.S., ch. 715, § 40, 1995 Tex. Gen. Laws 3755, 3802, authorized a district to "enter into a contract for the use by another of its water, power, facilities, or service, either inside or outside the district, except that a contract may not be made which impairs the ability of the district to serve lawful demands for service within the district." *See* Tex. Att'y Gen. Op. No. H-1217 (1978) at 1 (quoting former TEX. WATER CODE ANN. § 51.137, *repealed by* Act of May 25, 1995, 74th Leg., R.S., ch. 715, § 40, 1995 Tex. Gen. Laws 3755, 3802). The opinion concludes that section 51.137 authorized a private corporation's use of the River Authority's natural-gas pipeline "so long as the proposed contract will not impair" the River Authority's "ability to serve its lawful customer demands." *Id.* at 2. Section 49.225 of the Water Code, which applies to the Water District, among other provisions, appears to have replaced section 51.137 of the Water Code: the same legislation that repealed section 51.137 adopted section 49.225 as a general provision applicable to all general-law districts. *See* Act of May 25, 1995, 74th Leg., R.S., ch. 715, § 2, sec. 49.225, 1995 Tex. Gen. Laws 3755, 3775.

In response to your third question, we conclude that the Water District's proposed lease of excess fiber-optics cable capacity to a private telecommunications corporation is not a prohibited "private use" of public funds so long as the Water District receives adequate consideration from the telecommunications firm in exchange. Again, we considered a similar question in Attorney General Opinion H-1217. See Tex. Att'y Gen. Op. No. H-1217 (1978) at 3. That opinion concludes that Entex's use of the River Authority natural-gas pipeline is not an unconstitutional use of public property for private benefit so long as the River Authority is adequately compensated for the use of the pipeline:

> Article [III], section 51 of the Texas Constitution prohibits the grant of public money to corporations. See also Tex. Const. art. [III], § 52. However, the lease of public property to a private entity does not violate this provision where the transaction serves a public purpose and where an adequate rental is paid. See Dodson v. Marshall, 118 S.W.2d 621 (Tex. Civ. App.–Waco 1938, writ dism'd); Attorney General Opinions H-445 (1974); H-109 (1973). In our opinion, the proposed transaction serves a public purpose. The Legislature has provided statutory authority for it, thereby indicating it is a proper undertaking of a conservation and reclamation district. It will facilitate the transportation of fuel to public schools and to consumers, an endeavor affected with a public interest even when engaged in by private entities. See V.T.C.S. art. 1446c, § 2; art. 6050, § 3. So long as LCRA receives adequate consideration for the use of its pipeline, the transaction will not grant an unconstitutional benefit to a private entity.

Id. Thus, the Water District may lease excess fiber-optics cable capacity to a private entity without running afoul of constitutional restrictions on the use of public funds if the Water District receives consideration from the private telecommunication corporation commensurate with the value of the fiber-optics cable capacity. Having so concluded, we need not answer your fourth question, which is contingent upon a conclusion that the proposed lease arrangement is a prohibited "private use."

You ask whether a lease of excess fiber-optics cable capacity to a telecommunications carrier, "assuming that it causes no more damage to the land already burdened with a pipeline easement than if the cable were limited to the Water District's authorized SCADA use," constitutes an "additional burden" for which the landowner receives additional compensation, or an "incidental use" for which the landowner is not entitled to additional compensation. Request Letter, supra, at 18. The "incidental use doctrine," for which you cite Mellon v. Southern Pacific Transp. Co., 750 F. Supp. 226 (W.D. Tex. 1990), appears to apply only to railroad rights of way, which are bundles of rights more substantial than easements. See Mellon, 750 F. Supp. at 229-30 (in part quoting Western Union Tel. Co. v. Pennsylvania R.R., 195 U.S. 540, 570 (1904)). We do not understand the Water District to have more than an easement, so we do not believe that the incidental use doctrine, as articulated in Mellon, applies.

Nevertheless, we agree that the landowners here may have a claim for additional compensation. Just as the question of whether a particular easement permits the Water District to install fiber-optics cable or to lease its excess fiber-optics cable capacity, the question of whether the easement grantor must be compensated for the installation or lease involves interpretation of the easement itself and the resolution of numerous fact questions. Where an easement is granted for general purposes, the subservient estate includes the use required at the time of the grant as well as the right to use the easement for any purposes incidental to the use to which the property has been put. *See Clutter v. Davis*, 62 S.W. 1107, 1108 (Tex. Civ. App.–Dallas 1901, writ ref'd); 31A Tex. Jur. 3d *Easements & Licenses in Real Property* § 67 (1994). For example, in *Joyce v. Texas Power & Light Co.*, 298 S.W. 627 (Tex. Civ. App.–El Paso 1927, no writ), the court stated in dicta that Texas Power & Light Company, which had a right to condemn land necessary to erect poles and lines to transmit electric current, would not lose that right by also erecting telephone wires. *Id.* at 629. Such a secondary use "may or may not amount to an additional or other servitude upon the land," the court said. *Id.* Whether a secondary use constitutes an additional burden for which the grantor must be compensated is a question that cannot be resolved in the opinion process. *See, e.g.*, Tex. Att'y Gen. Op. Nos. JC-0032 (1999) at 4 (stating that question of fact is beyond purview of this office); JC-0027 (1999) at 3 (stating that questions of fact cannot be addressed in attorney general opinion); JC-0020 (1999) at 2 (stating that investigation and resolution of fact questions cannot be done in opinion process).

Finally, you ask whether the proposed lease constitutes "an illegal 'recoupment.'" Request Letter, *supra*, at 20. "The 'recoupment theory,'" you state, "refers to a means by which the government can finance a public project by taking more property rights than necessary for the project itself to later resell or lease to third parties to generate income for the government with which it might pay project costs." *Id.*; *see Atwood v. Willacy County Navigation Dist.*, 271 S.W.2d 137, 141 (Tex. Civ. App.–San Antonio 1954, writ ref'd n.r.e.), *appeal dism'd*, 350 U.S. 804 (1955) (per curiam) (explaining recoupment theory). Texas courts do not appear to have adopted the recoupment theory. *See Atwood*, 271 S.W.2d at 141-42. But we understand you to question whether using the easement for the proposed lease exceeds the power of eminent domain and is therefore illegal because proceeds from the lease may help pay the costs of the construction or operation of the pipeline.

A governmental body in Texas exceeds its power of eminent domain when "and only when" it "condemns land for a use unconnected with its legitimate purpose[], . . . simply . . . to meet the costs of its proper objectives." *Atwood*, 271 S.W.2d at 141. "[T]he mere fact that a municipal district, through its legitimate operations, may be expected to meet its expenses and even pay for the construction costs of its plant and facilities[] does not render its exercise of the power of eminent domain illegal." *Id.*

Assuming the facts are as you represent them, the proposed lease does not appear to exceed the Water District's power of eminent domain. Presumably, the Water District has acquired the easements for the purpose of constructing pipeline to transport water from distant reservoirs to

permit its installation and lease, the proposed lease use appears incidental to a legitimate purpose of the Water District. *See* TEX. CONST. art. XVI, § 59(a). Conversely, it does not appear that the Water District has acquired the easements solely to install a fiber-optics cable so that it could lease capacity to a telecommunications company and thereby raise money. Thus, the proposed lease does not appear illegally to exceed the Water District's power of eminent domain.

## S U M M A R Y

Whether a particular easement encompasses an easement to install fiber-optics cable to operate a water pipeline or the authority to lease excess fiber-optics cable capacity is a question of fact. Section 49.225 of the Water Code does not, as a matter of law, preclude the Tarrant County Regional Water District from leasing excess fiber-optics cable capacity to a telecommunications company. So long as the Water District receives from the telecommunications company adequate compensation for the use of the fiber-optics cable capacity, the lease does not constitute an unconstitutional private grant of public property.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General - Opinion Committee